GEWIN, Circuit Judge:
 

 This is an appeal from a judgment of the United States District Court for the Southern District of Florida denying the claim of the appellants for a refund of income taxes and interest paid after a deficiency was assessed by the Internal Revenue Service for the tax year 1959. In their joint return for 1959, the appelants
 
 [1]
 
 did not recognize the gain realized on the transfer of several parcels of real property but treated the transfers as an exchange of property under § 1031 of the I.R.C. of 1954. The I.R.S. asserted that the transfers constituted a sale and not an exchange and assessed a deficiency of $34,337.63 together with interest. The appellants paid the deficiency assessed, and filed a timely claim for refund. The claim was disallowed by the District Director of Internal Revenue and this suit followed. The district court concluded that the transfers constituted a sale and repurchase and rendered judgment for the Government. We affirm.
 

 The facts of the ease are fully stipulated. During the year 1959 and for several years prior thereto the appellants had been engaged in the ranching business. In connection with that business they owned a tract of land in Saint Lucie County, Florida, (ranch property) having a basis of $8,918.91. On October 18, 1958, they executed a contract with General Development Corporation (General) which gave General an option to acquire the ranch property for $250.00 an acre. General paid the appellants $50,000 deposit which was to be credited to the total purchase price should General exercise its option. The contract also provided that the appellant could require General, by notifying it in writing, to acquire such other land as designated by the appellants for the purpose of exchange in lieu of a cash payment or mortgage. General’s obligation to supply funds for any down payment which might be needed to bind any contracts to purchase other land for exchange was not to exceed the $50,000 advanced at the time the option was executed. In the event such an exchange could not be effected, General was to pay for the ranch property by cash and a mortgage securing the balance of the purchase price. From the outset of negotiations with General, the appellants desired to continue ranching operations and intended to exchange the ranch property for other property suitable for ranching. They also desired an exchange as opposed to a sale in order to obtain the tax benefits incident to an exchange under § 1031. At all times General desired simply to purchase the ranch property.
 

 Following the execution of the option contract with General, Thad Carlton (Carlton) found two suitable parcels of land, one in Gladen County, Florida (Lyons), and one in Hendry County, Florida (Fernandez). He conducted all the negotiations for the acquisition of these lands and paid the deposit for each by a cashiers check issued by his bank. The total deposit on both pieces of property did not exceed the fifty thousand dollars paid by General. When the negotiations to acquire the Lyons and Fernandez properties were complete, Carlton notified General in writing that he would require it to purchase these lands for the purpose of exchanging them for his ranch property, and the actual agree
 
 *240
 
 ments of sale were executed by General.
 
 [2]
 
 On May 11, 1959 General exercised its option to acquire the ranch property and arrangements were made to close the entire transaction around August 1, 1959. The closing of the several transactions actually occurred on August 3rd and 4th and in closing the appellants deviated from the original plan which resulted in the tax problem here in issue.
 

 In order to avoid unnecessary duplication in title transfer, a procedure was adopted whereby title to the Lyons and Fernandez properties would be conveyed directly to the appellants instead of to General and then to the appellants. To accomplish this result, General, on August 3rd, assigned to the appellants its contracts to purchase the two pieces of property and paid the appellants,
 
 by-check,
 
 the total amount it would have been required to pay if it had actually first purchased the Lyons and Fernandez property in its own name and then conveyed the land to the appellants. -Later that same day Carlton took the assignment of the contracts to purchase and purchased the Lyons property, using his personal check to close the sale. On August 4 he purchased the Fernandez property in a similar manner. At the time Carlton issued these checks, the balance in his checking account was too small to cover them, but he deposited the check received from General when the transaction with it was closed to meet these outstanding checks. This check was the balance of the cash purchase price and was in addition to the $50,000.-00 paid when the option was executed.
 

 The district court held that on the basis of these facts the transfers constituted a sale and repurchase. The court concluded that because General never acquired the legal title to the Lyons and Fernandez property, it could not have exchanged those properties for the ranch property. Rather, the court found that the appellants sold the ranch property to General and applied the cash thereby acquired to the purchase of the Lyons and Fernandez properties. The court also noted that Carlton was the active party in arranging the acquisition of the Lyons and Fernandez tracts and that he was personally liable on the notes and mortgages involved in such acquisitions. The appellants contend on this appeal that the district court erred in focusing on one aspect of a continuing transaction. They assert that the procedure adopted must be viewed as a single unitary transaction through which they intended to exchange properties, and which resulted in their acquiring property suitable for ranching and relinquishing their rights to like property. They insist that intent is the essential element which distinguishes a sale from an exchange. Since the Government has stipulated that an exchange was intended, and since the net result of the transaction was an exchange of ranching properties, they conclude, the transfers must be considered an exchange.
 

 Section 1031 of the I.R.C. of 1954, 26 U.S.C. § 1031 (1964) provides, in pertinent part, that the gain realized on the exchange of property of like kind held for productive use or investment shall not be recognized except to the extent that “boot” or cash is actually received.
 
 [3]
 
 
 *241
 
 There is little doubt that the ranch property and the Lyons and Fernandez properties are of like kind, and that the properties were held by the appellants for productive use. The only question presented here is whether the transfer of the properties constituted a sale or an exchange.
 

 Both parties agree that had the appellants followed the original plan, whereby General would have acquired the legal title to the Lyons and Fernandez properties and then transferred the title to such properties to the appellants for their ranch property, the appellants would have been entitled to postpone the recognition of the gain pursuant to § 1031. However, instead of receiving the title to the Lyons and Fernandez properties from General for their ranch property, the appellants received cash and an assignment of General’s contract rights to those properties. Thus, the ultimate question becomes whether the receipt of cash by the appellants upon transferring their ranch property to General transformed the intended exchange into a sale. The Government asserts that it does, and, under the facts and in the circumstances of this case, we agree.
 

 Section 1031 was designed to postpone the recognition of gain or loss where property used in a business is exchanged for other property in the course of the continuing operation of a business. In those circumstances, the taxpayer has not received any gain or suffered any loss in a general and economic sense. Nor has the exchange of property resulted in the termination of one venture and assumption of another. The business venture operated before the exchange continues after the exchange without any real economic change or alteration, and without realization of any cash or readily liquefiable asset. Jordan Marsh Co. v. C. I. R., 269 F.2d 453 (2 Cir. 1959); cf. Portland Oil Co. v. C. I. R., 109 F.2d 479 (1 Cir.) cert. den., 310 U.S. 650, 60 S.Ct. 1100, 84 L. Ed. 1416 (1940). The statute specifically limits the nonrecognition of gain or loss to exchanges of property, and it is well settled that a sale and repurchase do not qualify for nonrecognition treatment under the section. Coleman v. C. I. R., 180 F.2d 758 (8 Cir. 1950); Rogers v. C. I. R., 44 T.C. 126 (1965) aff’d 377 F.2d 534 (9 Cir. 1965); Cowden v. C. I. R., 65,278 P-H Memo TC (1965); see generally 3 Mertens, Federal Income Taxation §§ 20.16 — 20.31 (1967). Thus, even though the appellants continued their ranching business after the transaction here in question, that does not control the tax consequences of the transfers. Rather, it is essential that the transfers constituted an exchange and not a sale and repurchase if the tax benefits of § 1031 are to be applicable.
 

 The appellants contend that the entire transaction must be viewed as a whole in determining whether a sale or an exchange has occurred. They argue that the transfer of the ranch property to General for the cash and assignments was part of a single unitary plan designed and intended to effect an exchange of their ranch property for other property suitable for ranching. Thus, they conclude, the transfers of property should be construed to be an exchange.
 

 While it is true that the incidence of taxation is to be determined by viewing the entire transaction as a whole, Kanawaha Gas & Util. Co. v. C. I. R., 214 F.2d 685 (5 Cir. 1954), that rule does not permit us to close our eyes to the realities of the transaction and merely look at the beginning and end of a transaction without observing the steps taken to reach that end. C. I. R. v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981, 985 (1945). The requirement is that the transaction be
 
 *242
 
 viewed in its entirety in order to determine its reality and substance, for it is the substance of the transaction which decides the incidence of taxation. Century Elec. Co. v. C. I. R., 192 F.2d 155, 159 (8 Cir. 1951). In the instant case, while elaborate plans were laid to exchange property, the substance of the transaction was that the appellants received cash for the deed to their ranch property and not another parcel of land.
 
 [4]
 
 The very essence of an exchange is the transfer of property between owners, while the mark of a sale is the receipt of cash for the property. See Mercantile Trust Co. v. C. I. R., 32 B.T.A. 82 (1935); Coastal Terminals, Inc. v. United States, 320 F.2d 333 (4 Cir. 1963); Alderson v. C. I. R., 317 F.2d 790 (9 Cir. 1963); Allegheny County Auto Mart, Inc. v. C. I. R., 39 T.C. 615, aff’d 208 F.2d 693 (3 Cir. 1953); W. D. Haden Co. v. C. I. R., 165 F.2d 588, 590 (5 Cir. 1948); Trenton Cotton Oil Co. v. C. I. R., 147 F.2d 33, 36 (6 Cir. 1945); see generally 3 Mertens, supra at § 20.28. Where, as here, there is an immediate repurchase of other property with the proceeds of the sale, that distinction between a sale and exchange is crucial. Further, General was never in a position to exchange properties with the appellants because it never acquired the legal title to either the
 
 *243
 
 Lyons or the Fernandez property. Indeed, General was not personally obligated on either the notes or mortgages involved in these transactions. Thus it never had any property of like kind to exchange. Finally, it can not be said that General paid for the Lyons and Fernandez properties and merely had the properties deeded directly to the appellants.
 
 [5]
 
 The money received from General by the appellants for the ranch property was not earmarked by General to be used in purchasing the Lyons or Fernandez properties. It was unrestricted and could be used by the appellants as they pleased. The fact that they did use it to pay for the Lyons and Fernandez properties does not alter the fact that their use of the money was unfettered and unrestrained. It is an inescapable fact that the money received by appellants from General was money paid to them for a conveyance of their land. As a result, the separate transaction between General and the appellants must be construed to be a sale, and the transactions between the appellants and Lyons and Fernandez as a purchase of other property. Trenton Cotton Oil Co. v. C. I. R., supra; Spalding v. C. I. R., 7 B.T.A. 588 (1927); Rogers v. C. I. R., supra; 3 Mertens, supra § 20.28 at pp. 94-5.
 

 
 *236
 
 “It is said that [the certificate] professes to show merely the test of the contents of a sample packet with a mark upon it, and does not purport to show a test of the bill of lading of 100 tons of ore. This, I think, is a fanciful objection. Large quantities of produce are necessarily tested by means of samples. Such samples are drawn either by the servants of the owner of the goods or (as it seems) by the servants of the analyst, and if the samples are carefully and skilfully drawn they generally fairly represent the bulk. But in this case it would be no part of the bank’s duty to see to the sampling or to ascertain that it was fairly done.” 90 L.T.R. (n.s.) at 620.
 

 
 *243
 
 The appellants’ intention and desire to execute an exchange does not alter the reality and substance of the situation. It is well established that the intention of a taxpayer to avail himself of the advantages of a particular provision of the tax laws does not determine the tax consequences of his action, C. I. R. v. Duberstein, 363 U.S. 278, 286, 80 S.Ct. 1190, 4 L.Ed.2d 1218, 1225 (1960), but what was actually done is determinative of the tax treatment. Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001 (1924). Thus, the intention of the appellants to effect an exchange does not convert the transfer of property for cash into an exchange. The cases on which the appellants rely in support of their assertion that intent determines whether a transfer is a sale or exchange are factually distinguishable and inapposite.
 
 [6]
 
 They deal with the question of whether certain transfers between corporations and their stockholders are sales, exchanges for corporate stock, or capital investments. The sections under which they were decided and the problems they present are far different from the subject matter with which § 1031 is concerned.
 

 Therefore, we are compelled to conclude that the transfer of the ranch property to General constituted a sale, and rendered the nonrecognition of gain provisions of § 1031 inapplicable. Considering how close the appellants came to satisfying the requirements of that section and the stipulation that an exchange was intended, this result is obviously harsh. But there is no equity in tax law. Henderson Clay Products v. United States, 324 F.2d 7, 12 (5 Cir. 1962), and such must the result be if the limitation in § 1031 to exchanges is to have any meaning.
 

 The judgment of the district court is Affirmed.
 

 [1]
 

 . This suit was originally filed by Thad and June Pinson Carlton, husband and wife. Thad Carlton died while the case was pending in the district court and the administrators of his estate were substituted as parties plaintiff. Reference herein to the appellants refers to Thad and June Pinson Carlton, the taxpayers.
 

 [2]
 

 . At the insistence of the vendor, Carlton endorsed the note involved in the acquisition of the Lyons property. The exercise of this option by the appellants obligated General to effect an exchange and thereafter General could no longer purchase the ranch property but was obligated to make an exchange.
 

 [3]
 

 . Section 1031 reads as follows:
 

 “§ 1031 Exchange of property held for productive use or investment
 

 (a) Nonrecognition of gain or loss from exchanges solely in kind. — No gain or loss shall be recognized if property held for productive use in trade or business or for investment * * * is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.
 

 (b) Gain from exchanges not solely in kind. — If an exchange would be within the provisions of subsection (a) * * *, if it were not for the fact that the property received in exchange consists not only of property permitted by such provisions to be received without their recognition of
 
 *241
 
 gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.”
 

 * . * * * * * *
 

 § 1031 I.R.C. of 1954, 26 U.S.C. § 1031 (1964).
 

 [4]
 

 . While the characterization by a taxpayer of the nature of a transaction is not determinative, what the taxpayer said and did during the course of the transaction may shed some light on what was actually done. Although not of controlling importance, the following stipulated facts shed some light on what the taxpayer did in this case:
 

 “Simultaneously with the forwarding of the executed copies of the aforementioned contract to General on September 27, 1958, Plaintiffs entered into an agreement with two real estate brokers who were instrumental in negotiating the options. The agreement obligated Plaintiffs to pay stipulated commissions to said brokers in the event that the options were exercised and ‘the transactions of sale and purchase * * * closed.’ ”
 

 *******
 

 “On January 4, 1959, Decedent physically inspected the Lyons property, and then advised the representatives of the Lyons Estate that he was working out a final schedule with General in order to determine the amount of time T will need to close the purchase.’ ”
 

 “Decedent [Carlton] reiterated an earlier statement that ‘it was his intention to close the purchase of the Lyons property, * * * irrespective of whether or not General Development Corporation elects to exercise its option to purchase my property. I cannot well afford to forfeit the $32,500.00 payment, if it can possibly be avoided.’ ”
 

 * * * * * * *
 

 “On May 14, 1959, after receipt of the aforementioned election by General, Decedent requested the Estate to update the abstracts on its property and have them sent to him. On the same date, he requested permission from the Estate to clean up the premises of the Lyons property and to begin construction of two houses and a barn on them on or about June 1, 1959, in order to ' have the construction completed at the time of closing, when he desired to move his ranching operation there. Decedent promised to prohibit any liens from attaching to the premises, and stated that the sale of his property to General ‘will be closed at the same time I close my purchase with you’.”
 

 *******
 

 “On June 2, 1959, the following endorsement was added to this contract over the signature of Decedent, as required by Mr. and Mrs. Fernandez:
 

 “ T accept and agree to the provisions of the foregoing, and I further agree with the sellers, that when the property is conveyed to me, I will assume the mortgage and be personally responsible for its payment. I further agree that sellers shall have 90 days from date of closing to remove their cattle from the property.’ ”
 

 *******
 

 “The closing of the transaction involving the sale from Plaintiffs to General was held in Miami as scheduléd on August 3, 1959. The amount shown on the closing statement as ‘cash to close’ was paid by General by means of a cashier’s check in the amount of $199,-797.78 payable to Plaintiffs. On the same date, General issued its ten-year, interest-bearing, installment promissory note, in the amount of $952,143.00 to Plaintiffs.”
 

 [5]
 

 . For a similar situation in which such a transfer was held to be an exchange, see W. D. Haden Co. v. C. I. R., supra.
 

 [6]
 

 . The appellants cite Sarkes Tarzian, Inc. v. United States, 240 F.2d 467 (7 Cir. 1957); Rowan v. United States, 219 F.2d 51 (5 Cir. 1955); Kimbell-Diamond Milling Co. v. C. I. R., 187 F.2d 718 (5 Cir. 1951).