**BELL LINES, INC., Appellee,**
v.
**UNITED STATES of America,**
**Appellant.**
No. 72–2461.

United States Court of Appeals,
Fourth Circuit.

Argued April 3, 1973.

Decided June 26, 1973.

Helen E. Marmoll, Atty., Tax Div., U. S. Dept. of Justice (Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Richard W. Perkins, Attys., Tax Div., U. S. Dept. of Justice, and Robert B. King, Asst. U. S. Atty., on brief), for appellant.

Fuller Holloway, Washington, D. C. (William H. Bradford, Jr., and Hamel,

Park, McCabe & Saunders, Washington, D. C., on brief), for appellee.

Before CRAVEN, RUSSELL and WIDENER, Circuit Judges.

CRAVEN, Circuit Judge:

██ A corporation which trades in old trucks and pays boot in money for new trucks comes under Int.Rev.Code of 1954, § 1031; any gain on the trade-in is not recognized.[1] There is, however, a capital gain, fully recognizable in the year of the transaction, where a corporation sells old trucks at a profit even though the proceeds are used to purchase new trucks.[2] The two prior sentences are, obviously, simply different characterizations of the same economic event: replacement of property held for productive use in trade or business. But upon such characterizations tax consequences depend.[3] If the transaction is said to be a sale and purchase rather than an exchange, the taxpayer's future basis for depreciation is the actual cost of the new trucks. In this case Bell Lines treated truck replacement in its tax returns as a sale of old trucks and a separate purchase of new ones, and depreciated the new ones at full purchase price. The Commissioner viewed the transaction as a nontaxable exchange of old trucks for new trucks and accordingly adjusted the basis of the new trucks downward, reducing claimed depreciation deductions. In its suit for refund of taxes paid, the taxpayer prevailed in the district court, and the government appeals. We affirm.

Details of the transaction are as follows. The taxpayer, Bell Lines, Inc., as a West Virginia corporation with its principal place of business at Charleston, West Virginia, operated an interstate trucking line during 1959, 1960, and 1961. During this period of time, taxpayer's stock was owned by its officers and directors: John Amos, President; Fred Sclavi, Vice-President and General Manager; Betty Winterholler, Secretary-Treasurer.

In the spring of 1959, taxpayer decided to replace the major portion of its truck tractors. Mack Trucks, Inc., and White Motor Corporation submitted competitive bids, and in the course of bargaining White urged the taxpayer that more could be obtained for the old trucks by selling them to a buyer White had found than by trading them to Mack. Mack immediately offered to buy the old trucks rather than take them as trades. The taxpayer refused Mack's offer and stated that taxpayer was only interested in purchasing new trucks from Mack. Mack, in order to be competitive with White, offered to help taxpayer find a buyer.

Subsequently Mack submitted a proposal for the new tractors with prices quoted without reference to any trade-ins. On June 24, 1959, the board of directors of taxpayer voted to accept the Mack proposal. At the same time the

---

1. Int.Rev.Code of 1954, § 1031 provides in relevant part:

   (a) Nonrecognition of gain or loss from exchanges solely in kind.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

   . . . . .

   (d) Basis.—If property was acquired on an exchange described in this section, . . . then the basis shall be the same as that of the property exchanged, . . . .

2. Int.Rev.Code of 1954, § 1002 provides:
   Except as otherwise provided in this subtitle, on the sale or exchange of property the entire amount of the gain or loss, determined under section 1001, shall be recognized.

3. *See generally* United States v. Cumberland Pub. Serv. Co., 338 U.S. 451, 452, 454–455, 70 S.Ct. 280, 94 L.Ed. 251 (1950).

board authorized Sclavi to sell 143 old trucks.[4]

Pursuant to the board's action, taxpayer submitted a purchase order to Mack on June 26, 1959, for 148 tractors, and pursuant to the purchase order taxpayer signed conditional sale agreements —on August 15, 1959, for 40 tractors; on September 15, 1959, for 65 tractors; and on October 15, 1959, for 43 new tractors.

To dispose of taxpayer's used tractors, Sclavi accepted an offer of $650,000 from the Horner Service Corporation, an independent used truck dealership in Vineland, New Jersey. Unknown to the taxpayer, the Horner offer was prompted by an agreement between Mack and Horner. Horner agreed that it would purchase taxpayer's trucks and attempt to resell them, Horner would keep any profit it made, and Mack guaranteed that Horner would not lose money on any truck. Pursuant to this agreement, Mack furnished funds to Horner with which to pay for the taxpayer's used trucks and subsequently took title from Horner of most of the used trucks. Mack on its books treated the transaction as a trade-in.

The taxpayer treated the acquisition of new tractors and the disposition of old tractors as a purchase and sale and reported it as such on its 1959 tax return, paying tax on the capital gain resulting from the disposition of the used tractors. For depreciation of the new trucks, taxpayer used actual cost as the basis for the tax years here in question, 1960 and 1961. The Commissioner determined that the transaction was an "exchange" of tractors for tractors. Under the Commissioner's view, the taxpayer could only use for depreciation purposes a transferred basis, computed under § 1031(d). Since this was less than the basis used by taxpayer, a deficiency was assessed. Taxpayer paid the deficiency and brought this suit for a refund.[5]

The district court court found that taxpayer had entered into a contract with Mack for purchase of new trucks and had entered into a separate agreement with Horner for the sale of old trucks. The court further found that none of the officials of taxpayer knew of the arrangements between Mack and Horner. The government argues on appeal that the district court was clearly erroneous in finding: (1) that the transactions between taxpayer and Mack and between taxpayer and Horner were not mutually dependent; and, (2) that taxpayer did not have knowledge of the Mack-Horner arrangement.

The officers of taxpayer testified at the trial below. Winterholler stated that she would not have agreed to a trade-in and that taxpayer had never before traded-in tractors. Amos testified that he had no knowledge of the Horner-Mack arrangement and that the purchase by taxpayer of the 148 new trucks was not conditioned on the disposition of the old trucks. Sclavi also testified that the purchase from Mack was not conditioned on sale of the old trucks and that

4. Eventually 144 used trucks were sold. The board's authorization to sell 143 trucks was in apparent response to an offer from a used truck dealer, Udelson, on June 16, 1959, to purchase 143 trucks.

5. The Commissioner had originally assessed a deficiency for the year 1959 based on the useful life (of tractors) used by taxpayer for depreciation in the year of sale. When the Commissioner decided to treat the transaction as an exchange, he was unable to do so for 1959 because the deficiency based on useful life was already before the Tax Court.

When the suit for refund of 1960 and 1961 taxes was brought, the district court originally held that the 1959 Tax Court decision estopped the Commissioner from proceeding in 1960 and 1961 to treat the transaction as an exchange. On appeal we held that the issue of sale or exchange had not actually been determined, and accordingly, in light of Commissioner v. Sunnen, 333 U.S. 591, 600, 68 S.Ct. 715, 92 L.Ed. 898 (1948), we reversed and remanded. Bell Lines, Inc. v. United States, No. 71–1823 (4th Cir., Jan. 20, 1972).

he had no knowledge of the Mack-Horner arrangement. The purchase order agreement of June 26, 1959, and the conditional sales agreements appear to have been fully enforceable against taxpayer regardless of whether it disposed of its used tractors. *See, e. g.,* Wyckoff v. Painter, 145 W.Va. 310, 115 S.E.2d 80, 86–87 (1960).

In reviewing the findings of fact of the district judge we are bound by Fed. R.Civ.P. 52(a), whch provides in relevant part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." As stated in United States v. National Assoc. of Real Estate Bds., 339 U.S. 485, 495, 70 S.Ct. 711, 717, 94 L.Ed. 1007 (1950): "It is not enough that we might give the facts another construction, resolve the ambiguities differently, and find a more sinister cast to actions which the District Court apparently deemed innocent."

We think the testimony of taxpayer's officials, if believed, and the evidence of the contracts with Mack are sufficient to support the district court's findings. The district court's findings (1) that taxpayer had a binding agreement with Mack to purchase 148 tractors, (2) that taxpayer had a separate agreement with Horner to buy its used tractors, and (3) that taxpayer was unaware of the side agreement between Mack and Horner are not clearly erroneous.

■ There remains for us to determine whether on these facts the district court erroneously characterized the transactions as a sale and purchase rather than an exchange. We think not.

In Coastal Terminals, Inc. v. United States, 320 F.2d 333 (4th Cir. 1963), we held:

> The purpose of Section 1031(a), as shown by its legislative history, is to defer recognition of gain or loss when a direct exchange of property between the taxpayer and another party takes place; *a sale for cash does not qualify as a nontaxable exchange even though the cash is immediately reinvested in like property.* [Emphasis added].

320 F.2d at 337. *See also* Leo A. Woodbury, 49 T.C. 180, 197 (1967), *acquiesced in,* 1969–2 Cum.Bull. XXV; John M. Rogers, 44 T.C. 126, 133 (1965).

The court in Carlton v. United States, 385 F.2d 238 (5th Cir. 1967), stated:

> The very essence of an exchange is the transfer of property between owners, while the mark of a sale is the receipt of cash for the property. . . . Where, as here, there is an immediate repurchase of other property with the proceeds of the sale, that distinction between a sale and exchange is crucial.

385 F.2d at 242.

■ It is urged upon us that since Mack supplied funds to Horner to purchase the trucks and later took most of the trucks from Horner, the substance of the transaction is a trade-in or exchange between taxpayer and Mack. The question of sale or exchange often turns upon whether separate steps in a transaction are to be recognized or disregarded.[6] This depends on whether the steps are mutually dependent or merely artificial transactions, as opposed to being steps with legal significance in-

6. *See* Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945); Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935); Alderson v. Commissioner, 317 F.2d 790, 793–794 (9th Cir. 1963).

Where there is a series of steps resulting in a change of property interests, it is vitally important to determine whether each step is to be separately tested against the statutory provisions in determining gain or loss or whether all of the steps resulting in the complete transaction are to be considered in their entirety and effect given to the whole transaction rather than to any of its separate parts. Mertens, *infra* § 20.161, at 731.

dependent of the other steps and supported by legitimate business reasons. 3 Mertens, Law of Federal Income Taxation §§ 20.161, 20.163 (1972).

In the present case we cannot conclude that taxpayer had no legitimate business reasons for selling its old trucks and purchasing new ones. There was evidence it had always purchased without regard to trade-in value of old property, and it is doubtless possible to get a cheaper price where the dealer is not burdened with the necessity of disposing of old property. Moreover, as we have noted, the transactions were not mutually dependent as taxpayer was legally bound to purchase the 148 trucks from Mack whether it had sold the old ones or not. Thus the transaction between taxpayer and Horner may be reasonably viewed as one of substance to be treated separately from the taxpayer-Mack transaction.

That the two transactions were not mutually dependent also distinguishes this case from Redwing Carriers, Inc. v. Tomlinson, 399 F.2d 652 (5th Cir. 1968), and Rev.Rul. 61–119, 1961–1 Cum.Bull. 395. In *Redwing Carriers* the taxpayer had used its own wholly owned subsidiary to disguise an exchange as a sale and simultaneous purchase of property. The district court had specifically found that there would have been no purchase of the new equipment had there not been a concurrent and binding agreement for the sale of the old equipment. 399 F.2d at 655. The court thus held the transactions to be within § 1031(a). In Rev. Rul. 61–119 the disposition of old equipment to and acquisition of new equipment from the same dealer where the transactions were reciprocal was held to be an exchange even though accomplished by separately executed contracts.

In distinguishing *Carlton*, the *Redwing Carriers* court stated:

> The most that could be said for the transactional relationship in *Carlton* was that the sale for cash between the taxpayer and a purchaser had been *complementary* with the later purchase of like property between the taxpayer and a seller.

399 F.2d at 659.

Cases dealing with whether the replacement of property held for productive use in trade or business results in a sale or exchange have been termed "hopelessly conflicting."[7] However, the result in a case such as this one is controlled by the district court's finding of facts. *i. e.*, whether the replacement transactions were "complementary" or "mutually dependent." The district court's finding below, not clearly erroneous, that the transactions in question were not mutually dependent, precludes our determining that an exchange occurred. Accordingly, the decision of the district court will be

Affirmed.

---

7. Merteńs, *supra* § 20.161, at 730–31.