FINANCIAL DYNAMICS, LTD., a Florida Limited Partnership, d/b/a Jax Aero Service, A. F. Irby, Limited Partner, James F. Shivler, Jr., Limited Partner, Bob Alligood, Limited Partner, Dr. Roy M. Baker, Limited Partner, Norman Olitsky, Limited Partner, Dr. James H. Corwin, Limited Partner, Isaac L. Levy, Limited Partner, David K. MacCulley, Limited Partner, Mrs. Miriam C. Edwards, Limited Partner, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 77–476–Civ–J–B.

United States District Court, M. D. Florida, Jacksonville Division.

July 11, 1980.

Fred M. Cone, Jr., Peter W. Mettler, Jacksonville, Fla., for plaintiffs.

Randall M. Roden, Gary L. Betz, U.S. Atty., Tax Div., Dept. of Justice, Washington, D. C., Jacksonville, Fla., for defendant.

OPINION

SUSAN H. BLACK, District Judge.

This is a claim for tax refund by the individual limited partners of Financial Dynamics, Ltd., a Florida limited partnership. The United States has counterclaimed for excess taxes due. There is no dispute that the partnership is liable for the taxes; the only question is whether the individual partners are personally liable.

On September 2, 1971, Financial Dynamics, Ltd. was formed as a limited partnership with ten individual limited partners and one corporate general partner, Financial Dynamics General, Inc. (hereinafter "General"), a Florida corporation. The stock of this corporation was held by the individual limited partners in the same proportion as their interest in the limited partnership. General, as the general partner, entered into a management contract with Financial Dynamics, Inc., to provide management services for the partnership assets. The officers of General were individual limited partners and the president of Financial Dynamics, Inc., David MacCulley, was also a limited partner.

There is no dispute as to the reasons for which Financial Dynamics, Ltd. was formed. The individual partners desired to obtain the dual tax advantages of an immediate tax shelter and long-term capital gains. They also desired to limit their personal liability. Mr. Isaac Levy, a limited partner and general counsel to the partnership, contacted Arthur H. Hurwitz, Esquire, a tax specialist, to advise them on the best way to effectuate these goals. Hurwitz recommended a limited partnership with a sole corporate general partner.

Within a few months, however, Hurwitz began to "hear rumblings" that the Inter-

nal Revenue Service might treat a limited partnership with a corporation with limited capitalization as the sole general partner as an association taxable as a corporation rather than a partnership. Hurwitz discussed with Levy the possibility of making one of the individual limited partners a general partner to avoid this treatment, but the idea was rejected.

Thereafter, in order to be assured that the partnership would gain the desired tax advantages, Hurwitz drafted the First Amendment to the Partnership Agreement and Certificate. This amendment changed paragraph fourteen of the agreement to read, "management of the business of the partnership shall be conducted by all the partners whose unanimous decisions shall become the decisions of the partnership." Paragraph twelve was changed to read, "the General Partner shall be responsible only for ministerial functions of the partnership: to wit: The carrying out of decisions previously made by unanimous consent of the partners." The amendment was executed by the partners on December 30, 1971, and filed with the Florida Secretary of State on January 13, 1972.

The effect of the amendment is the core of this litigation. Defendant points out that such a measure of control in the limited partners is inconsistent with the Florida Uniform Limited Partnership Act. Fla. Stat. § 620.07. It argues that the amendment, in effect, changed the partnership to a general partnership, making the individual partners personally liable for the debts of the partnership. Plaintiffs, on the other hand, contend that the partners never intended to change the nature of the partnership by the amendment. They further assert, and the Court finds, that none of the limited partners took part, as individuals, in the management of the partnership. On this basis, plaintiffs contend that the Court should look to the intent of the parties rather than the language of paragraphs twelve and fourteen in defining the personal liability of the partners.

However, plaintiffs' position ignores the fact that the tax advantages they have enjoyed were closely related to the personal liability they now seek to avoid. Hurwitz recognized the risk that the Internal Revenue Service would not tax the association as a partnership because it had certain characteristics of a corporation, including an apparent limited liability. At trial he stated that,

> Under my understanding of what might be happening at the Internal Revenue Service, they could well be about to, perhaps, institute some attack on these organizations in an effort to treat them as a corporation because in essence everyone would have limited liability. The limited partners by virtue of their capacity and the general partner in essence would have limited liability because it would have no assests [sic] to pay a claim. That was what concerned me. (Record at 45).

In order to insure the desired tax advantages, he drafted the first amendment. The only possible way this amendment would protect the partnership's tax status is by making it appear that the partners were exposed to personal liability.

Hurwitz further testified that he discussed the potential for increased liability with Levy when he drafted the amendment.

> Roden: Mr. Levy—I'm sorry, Mr. Hurwitz, can you state with certainty that prior to the adoption of the amendment which is already in evidence, did you advise Mr. Levy of the increasing risk to the limited partners for increased liability to third parties if the amendment was adopted as you were proposing?
>
> Hurwitz: I know it was discussed at that time, Mr. Roden, I'm really quite sure it was discussed before it was executed. (Record at 41).

Levy denies this discussion and denies reading the amendment. However, the Court finds it incomprehensible that a practicing attorney would sign and recommend that his clients sign a document without having read it. It is also inconceivable that a practicing attorney would not have grasped immediately the legal significance of the change. The Court finds Mr. Hurwitz' testimony to be much more credible.

Nor is it important that the partners intended to form a limited partnership. "It is well established that the intention of a taxpayer to avail himself of the advantages of a particular provision of the tax law does not determine the tax consequences of his action ...." *Carlton v. United States*, 385 F.2d 238, 243 (5th Cir. 1967). The government may bind a taxpayer to the form in which he has cast a transaction. *In re Steen*, 509 F.2d 1398 (9th Cir. 1975). The taxpayer in this case adopted the form of a general partnership in order to obtain tax advantages and did, in fact, enjoy the tax advantages of the chosen form. "[W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not." *Commissioner v. National Alfalfa Dehydrating and Milling Co.*, 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974). Therefore, the Court finds that the individual plaintiffs were general partners and are, therefore, personally liable for the delinquent taxes of the partnership.

Pursuant to the parties' pre-trial stipulation, filed on January 28, 1980, the Court will this day enter an order requiring the defendant to recompute the amount of tax liability in accordance with this Opinion.