ANTONIO D'ONOFRIO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
D'Onofrio v. Commissioner
Docket No. 19403-81.
United States Tax Court
T.C. Memo 1983-632; 1983 Tax Ct. Memo LEXIS 158; 47 T.C.M. (CCH) 29; T.C.M. (RIA) 83632; October 12, 1983. *158 In November, 1975, petitioner contracted to exchange property on Buena Vista Avenue in Alameda, California, and two other properties in Alameda for two properties in Hayward, California, owned by X. In April 1976, petitioner sold the Buena Vista property to Y for cash. In May, 1976, petitioner transferred his two remaining Alameda properties plus some of the cash from the sale of the Buena Vista property to X in exchange for the Hayward properties. Held, petitioner's disposition of the Buena Vista property did not qualify for nonrecognition of gain under section 1031, I.R.C. 1954. Glenn D. Bigelow, for the petitioner. M. Catherine McKenna, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined *159 a deficiency in petitioner's Federal income tax for the taxable year 1976 of $8,094.66. Due to concessions, the issue for decision is whether petitioner's disposition of property located at 2060 Buena Vista Avenue, Alameda, California, in 1976, qualified for nonrecognition of gain under section 1031. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by reference. Petitioner Antonio D'Onofrio resided in California at the time he filed his petition herein. In November, 1970, petitioner and his wife purchased a six unit apartment house located at 2060 Buena Vista Avenue, Alameda, California (the "Buena Vista property"), for $50,000.Thereafter, they held this property as rental property. In the spring of 1975, an agent of Prudential Realty and Finance Company ("Prudential") approached petitioner, inquiring whether he would be interested in acquiring two rental properties located at 22189 South Garden Avenue ("22189") and 22211 South Garden Avenue ("22211") *160 in Hayward, California (collectively the "Hayward properties") then owned by Guido H. and Louise pfotenhauer. Petition expressed interest in the proposed transaction and on October 31, 1975, executed an offer to exchange the Buena Vista property and two other properties which petitioners owned, located at 1304 Morton Street and 1201 Pacific Avenue in Alameda, California, respectively, for the Hayward properties. On November 3, 1975, petitioner signed an "Exchange Agreement" with "G. M. Schwartz, Gen. Partner" [2] to effect the abovedescribed exchange. Among the terms of this agreement was one providing that the offer was subject to "selling" petitioner's three properties in escrow. On reading the language of the Exchange Agreement, petitioner became concerned that he could not be guaranteed that his three properties would be sold by the Pfotenhauers in connection with the exchange, since substantial cash would be required by them to consummate the transaction. The Prudential broker reassured petitioner, however, by stating *161 that definite buyers for petitioner's properties at 1304 Morton Street and 1201 Pacific Avenue and a probable buyer for the Buena Vista property had already been located. Petitioner was concerned, though, that the Buena Vista property might still not be included in the exchange. At this point, the petitioner and "G. M. Schwartz, Gen. Partner" signed another Exchange Agreement, also dated November 3, 1975. This second agreement provided only for the exchange of the Buena Vista property for 22189. This latter agreement contained no provision making it subject to the sale of the Buena Vista property in escrow. Prudential eventually located Fred J. Williams ("Williams") as a buyer for the Buena Vista property. On March 4, 1976, petitioner signed a "Deposit Receipt" acknowledging receipt of $500 from Williams towards the purchase price of the Buena Vista property. The Deposit Receipt provided that petitioner, as seller, would sell the Buena Vista property to Williams for $85,000. The Deposit Receipt further provided "Acceptance subject to Seller acquiring 22189 So. Garden Ave., Hayward, and 22211 So. Garden Ave." In late March or early April, 1976, title to the Buena Vista *162 property was transferred to Williams. Petitioner, having incurred $2,267 in sales expenses, realized a net amount of $82,733 from the sale of the Buena Vista property. At the time of the sale, his adjusted basis in that property was $41,991. On or about April 5, 1976, the escrow agent for the sale, after satisfying various mortgages and other charges, delivered to petitioner a check for $29,029.09, [3] representing the balance then remaining in the Buena Vista property escrow account. On May 18, 1976, petitioner exchanged his two remaining properties in Alameda for the Hayward properties. The escrow instructions indicate that the net balance in the escrow account relating to the property at 1304 Morton Street was applied toward the acquisition of 22211; the net balance in the escrow account relating to the property at 1201 Pacific Avenue was applied toward the acquisition of 22189. In order to complete the exchange, petitioner was required to pay an additional $20,023.47 for 22211 and $22,845.24 for 22189. Notations on the escrow instructions indicate that the additional payment of $20,023.47 for 22211 was made *163 out of the proceeds of the sale of the Buena Vista property. OPINION The issue for decision is whether the gain petitioner realized on the disposition of the Buena Vista property in 1976 is entitled to nonrecognition under section 1031.
Section 1031 provides that "[n]o gain or loss shall be recognized if property held for productive use in trade or business or for investment * * * is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment." Respondent argues that since petitioners sold the Buena Vista property and in return received only cash, no exchange occurred and section 1031 is inapplicable. Petitioner argues that the sale of the Buena Vista property was a mistake; that he intended to exchange the Buena Vista property and two other properties in Alameda for two properties in Hayward; and that since the total proceeds of the sale of the Buena Vista property were subsequently used to acquire the Hayward properties, in substance the Buena Vista property was exchanged. *164 "The touchstone of section 1031 * * * is the requirement that there be an exchange of like-kind business or investment properties, as distinguished from a cash sale of property by the taxpayer and a reinvestment of the proceeds in other property." Barker v. Commissioner,74 T.C. 555, 560-561 (1980) (emphasis in original). Swaim v. United States,651 F.2d 1066 (5th Cir. 1981); Starker v. United States,602 F.2d 1341, 1352 (9th Cir. 1979); Carlton v. United States,385 F.2d 238, 241 (5th Cir. 1967); Rogers v. Commissioner,44 T.C. 126, 133 (1965), affd. per curiam 377 F.2d 534 (9th Cir. 1967). As we also stated in Barker v. Commissioner,supra at 561: The "exchange" requirement poses an analytical problem because it runs headlong into the familiar tax law maxim that he substance of a transaction controls over form. In a sense, the substance of a transaction in which the taxpayer sells property and immediately reinvests the proceeds in like-kind property is not much different from the substance of a transaction *165 in which two parcels are exchanged without cash. Bell Lines, Inc. v. United States,480 F.2d 710, 711 (4th Cir. 1973). Yet, if the exchange requirement is to have any significance at all, the perhaps formalistic difference between the two types of transactions must, at least on occasion, engender different results. Accord, Starker v. United States,602 F.2d 1341, 1352 (9th Cir. 1979). In Carlton v. United States,supra, the parties to an exchange agreement deviated from their original plan and at the closing the taxpayer received unrestricted cash and contracts to purchase the properties they sought. Later that day and the next day, the taxpayers used the cash to complete the acquisition of those properties. The taxpayers argued that their original intent to exchange coupled with their use of the cash proceeds to acquire like-kind properties brought their transaction within section 1031. The Court stated: The very essence of an exchange is the transfer of property between owners, while the mark of a sale is the receipt of cash *166 for the property. [citations omitted]. Where, as here there is an immediate repurchase of other property with the proceeds of the sale, that distinction between a sale and exchange is crucial. [385 F.2d at 242.] The Court in Carlton found that no exchange had occurred, but that instead there had been a sale for money and a reinvestment of unrestricted proceeds. Under the circumstances, the taxpayers' intent to consummate an exchange was held insufficient to bring the transaction within section 1031. Accord Swaim v. United States,supra.[4]
We believe the instant case is governed by Carlton. Here, the petitioner initially intended to consummate a three-property for two-property like-kind exchange. For unexplained reasons, however, petitioner did not complete the exchange as planned. He transferred the Buena Vista property to a party who did not own the Hayward properties and received unrestricted cash in *167 return. He then used some of the cash [5] to consummate a two-property for two-property like-kind exchange approximately six weeks later. Petitioner sold the Buena Vista property and reinvested some of the proceeds in other property; he did not exchange the Buena Vista property. See Von Muff v. Commissioner,T.C. Memo. 1983-514. Petitioner attempts to distinguish cases like Carlton by arguing it was not his intention to have the Buena Vista escrow close prior to the exchange for the Hayward properties. Some support for this argument may be found in a provision in the "Deposit Receipt" dated March 2, 1976, in connection with the sale of the Buena Vista property, which stated: "Acceptance subject to Seller acquiring 22189 So. Garden Ave., Hayward, and 22211 So. Garden Ave." However, we must reject this attempted distinction. First, the Buena Vista escrow closed in apparent disregard of the above *168 mentioned provisions of the Deposit Receipt. But there is no evidence in this record that petitioner objected to the premature receipt of the cash or tried to block the early transfer of title on the Buena Vista property. The lack of such conduct undermines petitioner's argument that he was an unintentional participant in the closing of the Buena Vista escrow. Second, petitioner's April, 1976, contract to sell the Buena Vista property directly to Williams is inconsistent with the originally planned three-corner exchange. On November 3, 1975, petitioner agreed to convey the Buena Vista property in a package to the Pfotenhauers. In fact, he sold it directly to Williams. There is no evidence here that petitioner acted as the Pfotenhauers' agent in selling the Buena Vista property. Nor is there evidence that the terms of the Buena Vista escrow prohibited petitioner from receiving the proceeds from the sale of such property. Contrast Starker v. United States,602 F.2d 1341 (9th Cir. 1979); Barker v. Commissioner,supra.
We recently noted in Garcia v. Commissioner,80 T.C. 491, 498 (1983), that *169 in like-kind exchange cases "stated intent has received deference where parties have acted consistently therewith." Here, petitioner did not act consistently with his stated intent. Finally, petitioner contends that he should not be penalized for acting on the erroneous advice of his broker. As we stated in Meadows v. Commissioner,T.C. Memo. 1981-417, "[i]it is unfortunate if petitioner was misled by the representation of a real estate agent. However, this fact in no way causes his gain on the sale * * * not to be [currently] taxable to him * * *." 42 TCM 611, 613, 50 P-H Memo T.C. par. 81, 417, p. 1515 (1981).
To reflect concessions, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. The record does not reveal the existence or name of any partnership or why such partnership, and not the Pfotenhauers, signed the exchange agreement.↩
3. Erroneously shown as $29,016.27 on Escrow Statement.↩
4. See also Allen v. Commissioner,T.C. Memo. 1982-188; Milbrew, Inc. v. Commissioner,T.C. Memo. 1981-610, affd. on other issues 710 F.2d 1302↩ (7th Cir. 1983).
5. Although petitioner contends that all of the proceeds of the Buena Vista sale were used to acquire the Hayward properties, the escrow documents show the use only of $20,023.47 of the $29,029.09 proceeds received in the exchange occurring on May 18, 1976.↩