A. LEVERE ANDERSON and ESTER L. ANDERSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anderson v. Commissioner
Docket No. 29800-82.
United States Tax Court
T.C. Memo 1985-205; 1985 Tax Ct. Memo LEXIS 427; 49 T.C.M. (CCH) 1352; T.C.M. (RIA) 85205; April 29, 1985. Matthew C. Long, for the petitioners. Brian Kawamoto, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $10,375 in petitioners' Federal income tax for the year 1978. The sole issue for decision is whether the disposition of a certain real property and the acquisition of a certain other real property constituted a nontaxable exchange under section 1031. [1]
FINDINGS OF FACT Petitioners are husband and wife and resided in Los Angeles, California, at the time they filed their petition herein. They filed a joint Federal income tax return for 1978. Prior *428 to August 1978, petitioners owned and held for investment purposes a parcel of real property located in Los Angeles, California (the Los Angeles property). In or about early August 1978, petitioners agreed to sell the Los Angeles property to Bobby and Helen Wyche (the Wyches). Petitioners and the Wyches opened an escrow, dated August 9, 1978, with Southwest Escrow Corp. (Southwest). The escrow provided for closing on or before October 9, 1978, and for a total consideration from the Wyches of $100,000, $80,000 of which would be provided by a new loan on the Los Angeles property. At the closing of the escrow, the $100,000 purchase price, less certain fees and other charges payable in connection with the transaction, was payable for the account of petitioners. The escrow directed Southwest to pay any existing loans on the Los Angeles property. The escrow contained no reference to any other real property transaction involving petitioners. On August 25, 1978, petitioners entered into a contract with Steve and Theresa Leonardo (the Leonardos), under which petitioners agreed to purchase from the Leonardos a parcel of real property located in Ukiah, California (the Ukiah property). *429 The contract provided for closing within 45 days and for a total consideration from petitioners of $89,500, $59,500 of which would be provided by a loan on the property. The contract did not refer to the transaction in which petitioners agreed to sell the Los Angeles property to the Wyches. Petitioners intended to consummate simultaneously the sale of the Los Angeles property and the purchase of the Ukiah property.The Wyches were not able to obtain financing by the date set for closing the Los Angeles property transaction, however, and the Leonardos insisted upon closing the Ukiah property transaction on time. On October 17, 1978, petitioners and the Leonardos closed the Ukiah property transaction. Petitioners received a deed to the Ukiah property dated October 4, 1978, which was recorded on October 17, 1978. The closing documents contained no reference to the Los Angeles property transaction. To provide the cash necessary for closing the Ukiah property transaction, petitioners obtained a loan of $30,823.42 from Laire Federal Credit Union (Laire). As security for the loan, petitioners agreed to instruct Southwest to remit $31,000 to Laire upon the closing of the Southwest *430 escrow. By letter dated October 17, 1978, petitioners conveyed this instruction to Southwest. Petitioners and the Wyches closed the Los Angeles property transaction on December 17, 1978. The Wyches received a deed to the Los Angeles property dated August 9, 1978, which was recorded on December 19, 1978. Consistent with petitioners' prior instructions, Southwest paid $31,000 to Laire upon closing. Of the remaining cash payable for the benefit of petitioners, approximately $47,000 was used to pay off outstanding loans on the property and approximately $20,000 was paid to petitioners. [2]
On their Federal income tax return for 1978, petitioners computed and disclosed a gain of $41,441 from the sale of the Los Angeles property, but took the position that the gain resulted from a nontaxable exchange. Respondent determined that the purchase *431 of the Ukiah property and the sale of the Los Angeles property did not qualify as a nontaxable exchange under section 1031. He therefore concluded that petitioners should have recognized a long-term capital gain of $49,649 as a result of the sale of the Los Angeles property. Petitioners do not dispute the mechanics of respondent's computation but argue that section 1031 should apply. OPINION Section 1031 provides that a taxpayer shall not recognize gain or loss upon the exchange of business or investment property for property of a like kind. In the present case, the parties agree that the Los Angeles property and the Ukiah property were investment properties of a like kind for the purpose of section 1031. The sole question before us is whether petitioners acquired the Ukiah property in exchange for the Los Angeles property. The courts have long recognized that a transaction may constitute an exchange even though "the person who owns the property sought by the taxpayer is not the same person *432 who wants to acquire the taxpayer's property." Barker v. Commissioner,74 T.C. 555, 561 (1980). In evaluating such multiple-party transactions, the courts have found the requisite exchange where the party desiring the taxpayer's property first acquired the property desired by the taxpayer and soon thereafter exchanged it for the taxpayer's property. See, e.g., Alderson v. Commissioner,317 F.2d 790 (9th Cir. 1963), revg. 38 T.C. 215 (1962); Barker v. Commissioner,supra;Mercantile Trust Co. of Baltimore v. Commissioner,32 B.T.A. 82 (1935). A transaction may constitute an exchange although the party acquiring the taxpayer's property never held legal title to the property acquired by the taxpayer. See W. D. Haden Co. v. Commissioner,165 F.2d 588 (5th Cir. 1948); Biggs v. Commissioner,69 T.C. 905 (1978), affd. 632 F.2d 1171 (5th Cir. 1980). Moreover, in Starker v. United States,602 F.2d 1341 (9th Cir. 1979), the Court of Appeals for the Ninth Circuit held that the transfer of property by the taxpayer and the taxpayer's receipt *433 of like-kind property need not occur simultaneously. An actual exchange is nevertheless essential for nonrecognition under section 1031. The taxpayer who sells property must recognize gain or loss, even if he immediately reinvests the proceeds of the sale in like-kind property. Carlton v. United States,385 F.2d 238 (5th Cir. 1967); Wheeler v. Commissioner,58 T.C. 459 (1972); Rogers v. Commissioner,44 T.C. 126 (1965), affd. per curiam 377 F.2d 534 (9th Cir. 1967). We must therefore determine "whether taxpayer in effect conveyed title to his property in consideration for title to the property received." Brauer v. Commissioner,74 T.C. 1134, 1144 (1980). Petitioners argue that we should treat the purchase of the Ukiah property and the sale of the Los Angeles property as an integrated transaction in which petitioners in effect exchanged the Los Angeles property for the Ukiah property. In making this determination, the steps taken to accomplish the end result must be considered as well as the result *434 itself. The substance of the transaction, rather than its form, must govern the tax consequences. See Commissioner v. Court Holding Co.,324 U.S. 331 (1945); Gregory v. Helvering,293 U.S. 465 (1935); Biggs v. Commissioner,69 T.C. 905 (1978), affd. 632 F.2d 1171 (5th Cir. 1980); Barker v. Commissioner,74 T.C. 555 (1980). [Garcia v. Commissioner,80 T.C. 491, 497-498 (1983).] Thus the integration of separate transactions is proper where the transactions are mutually interdependent. Bell Lines, Inc. v. United States,480 F.2d 710, 713 (4th Cir. 1973); Redwing Carriers, Inc. v. Tomlinson,399 F.2d 652, 658 (5th Cir. 1968); Century Electric Co. v. Commissioner,192 F.2d 155 (8th Cir. 1951); Garcia v. Commissioner,supra.Contractual interdependence, while persuasive, is not necessary for a finding of mutual interdependence. Biggs v. Commissioner,69 T.C. 905, 914-918 (1978), affd. 632 F.2d 1171 (5th Cir. 1980); Garcia v. Commissioner,80 T.C. at 502; *435 Barker v. Commissioner,74 T.C. 555, 566 n.5 (1980). It is sufficient that the component transactions constituted a single, integrated plan to effect an exchange. Garcia v. Commissioner,80 T.C. at 502. We do not find such an integrated plan in the present case. Co-petitioner Ester L. Anderson (Mrs. Anderson) testified that petitioners intended to close the two transactions simultaneously. The intention of the parties is indeed important in determining whether an integrated plan existed and thus whether a series of transactions constituted an exchange or a sale and reinvestment of the proceeds. See Biggs v. Commissioner,632 F.2d 1171, 1178 (5th Cir. 1980), affg. 69 T.C. 905 (1978); Coastal Terminals, Inc. v. United States,320 F.2d 333 (4th Cir. 1963); Alderson v. Commissioner,317 F.2d 790 (9th Cir. 1963), revg. 38 T.C. 215 (1962); Garcia v. Commissioner,supra;Barker v. Commissioner,supra.See also Starker v. United States,602 F.2d 1341 (9th Cir. 1979). *436 Mrs. Anderson's testimony, however, is wholly consistent with an intention to close simultaneously separate purchase and sale transactions. In light of the unambiguous documents providing for the sale of the Los Angeles property and the independent purchase of the Ukiah property, we are unable to treat her testimony as adequately establishing an intention on petitioners' part to exchange the two properties. "[A]lthough a taxpayer's own documents are not conclusive, they normally override any conflicting subjective considerations advanced by the taxpayer." Redwing Carriers, Inc. v. Tomlinson,399 F.2d at 659 n.9. Moreover, the requirement of an integrated plan of exchange demands more than the mere unilateral intent of petitioners. Petitioners presented no evidence of the intent, or even the knowledge, of the Wyches or the Leonardos regarding a plan of exchange. Cf. Bell Lines, Inc. v. United States,480 F.2d 710, 712-713 (4th Cir. 1973). In any event, *437 mere intent to effect an exchange is insufficient to bring the transactions within the parameters of section 1031. See Swaim v. United States,651 F.2d 1066 (5th Cir. 1981); Carlton v. United States,385 F.2d 238 (5th Cir. 1967). Whatever the parties' intentions, petitioners presented no evidence that an independent purchase and sale did not occur, as represented in the related documents. Cf. Brauer v. Commissioner,74 T.C. 1134 (1980) (original contract for sale of property subsequently modified to effect exchange); Alderson v. Commissioner,supra.The use of proceeds from the sale of the Los Angeles property to repay the loan from Laire did not transform the independent transactions into an exchange. We recognize that, had the parties structured the transactions differently, petitioners could have obtained the benefits of section 1031. As indicated by our reliance upon the form of the transactions as cast by petitioners, however, in this area substance and form are often inseparable. The "exchange" requirement *438 poses an analytical problem because it runs headlong into the familiar tax law maxim that the substance of a transaction controls over form. In a sense, the substance of a transaction in which the taxpayer sells property and immediately reinvests the proceeds in like-kind property is not much different from the substance of a transaction in which two parcels are exchanged without cash. Bell Lines, Inc. v. United States,480 F.2d 710, 711 (4th Cir. 1973). Yet, if the exchange requirement is to have any significance at all, the perhaps formalistic difference between the two types of transactions must, at least on occasion, engender different results. Accord, Starker v. United States,602 F.2d 1341, 1352 (9th Cir. 1979). [Barker v. Commissioner,74 T.C. at 561.] Our opinion herein is consistent with recent decisions on similar facts. In Allen v. Commissioner,T.C. Memo. 1982-188, for example, we concluded that a sale and a purchase, not an exchange, occurred despite the simultaneous closing of the two transactions and despite the direct transfer in escrow of the sales proceeds. See also Meadows v. Commissioner,T.C. Memo. 1981-417. *439 Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. On December 1, 1978, petitioners instructed Southwest to transfer the net proceeds of the escrow into a different escrow. Approximately $20,000 was so transferred at closing. Petitioners stipulated at trial that, even if we conclude that the transaction herein involved a nontaxable exchange, the $20,000 constituted "boot" to petitioners.↩