GARBIS S. BEZDJIAN AND MAIDA M. BEZDJIAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bezdjian v. Commissioner
Docket No. 13306-82.
United States Tax Court
T.C. Memo 1987-140; 1987 Tax Ct. Memo LEXIS 132; 53 T.C.M. (CCH) 368; T.C.M. (RIA) 87140; March 16, 1987. Dennis R. DiRicco and Bernard P. Kenneally, for the petitioners. Barbara Leonard, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in petitioners' 1978 and 1979 Federal income taxes in the amounts of $37,594.00 and $2,417.00, respectively. The issue for decision is whether the transaction described below satisfies the "exchange" requirement of section 1031. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated *133 by this reference. During 1978, Shell Oil Company (Shell), conveyed to petitioners property located at 1199 Broadway/Laguna, Burlingame, California (Broadway property), and petitioners conveyed to Roberta and Barbara Levey (Leveys) property located at 1236 El Camino Real, Burlingame, California (El Camino property). Prior to March 21, 1978, Garbis Bezdjian (petitioner) and representatives of Shell negotiated for the sale of the Broadway property from Shell to petitioner. The representatives informed petitioner that the price of the property was $175,000. Petitioner asked the representatives if Shell was interested in exchanging the Broadway property for other real property. The representatives refused to participate in such an exchange and informed petitioner that Shell was only interested in selling the property for cash. On March 21, 1978, Shell informed petitioner that he had 30 days to purchase the property for $175,000 and that the sale had to close by September 15, 1978. On April 13, 1978, petitioner deposited $10,000 of earnest money with Shell. Two days later, petitioner offered, as consideration for the purchase of the Broadway property, to deposit $175,000 in escrow *134 at the Title Insurance and Trust Company (Title Insurance escrow) by September 15, 1978. On May 18, 1978, Shell accepted petitioner's offer. Three days after petitioner and Shell executed a written contract, petitioner contacted Armen Sossikian (Sossikian), a real estate agent, to discuss with him the sale of the El Camino property. Petitioner told Sossikian that he wanted him to close the Broadway and El Camino properties simultaneously and that the proceeds from the sale of the El Camino property were to go to Shell via the Title Insurance escrow. Because petitioner and Sossikian could not find a buyer for the El Camino property prior to September 15, 1978, the date of the Broadway property closing, petitioner negotiated a $165,000 loan from the Chartered Bank of London (Chartered Bank). As security for said loan, he executed a promissory note and deeds of trust on the El Camino property and his personal residence. On August 22, 1978, Chartered Bank transferred the $165,000, which petitioner borrowed, to the Title Insurance escrow. On September 6, 1978, the Title Insurance escrow disbursed the funds in the escrow to Shell and recorded the deed which transferred the Broadway *135 property from Shell to petitioner. On September 25, 1978, the Leveys, after refusing to participate in an exchange of the El Camino property for other real property, offered to purchase the El Camino property for $257,500. On that same day, petitioners accepted the Leveys' offer. Subsequent to petitioners' acceptance, the Leveys had trouble financing their purchase, and because of said trouble, petitioners and the Leveys modified their contract so that the purchase price would be $10,000 less, i.e., $247,500. On October 6, 1978, petitioner opened an escrow at the Founders Title Company (Founders escrow) for the sale of the El Camino property. To finance their purchase of the El Camino property, the Leveys obtained a $79,500 loan from Chartered Bank and assumed a $67,335.63 mortgage on the property. By December 4, 1978, Chartered Bank had deposited the $79,500, which the Leveys borrowed, and the Leveys had deposited the balance of the funds needed to purchase the El Camino property, in the Founders escrow. On December 4, 1978, Founders escrow recorded a deed, which conveyed the El Camino Property to the Leveys, and disbursed $170,683.27 to Chartered Bank as repayment for *136 petitioners' $165,000 loan, plus accrued interest. The following diagram chronologically depicts the steps which the participants took to effect the transfers: [SEE ILLUSTRATION IN ORIGINAL] Petitioners realized a gain from the sale of the El Caminio Property, but did not recognize said gain because they claimed that the transaction was subject to the nonrecognition provisions of section 1031. In a notice of deficiency, respondent determined that section 1031 did not apply because, pursuant to said section, petitioners' purchase of the Broadway property and sale of the El Camino property were not an "exchange." OPINION Section 1031(a) provides that no gain or loss shall be recognized if property held for productive use in a trade or business or for investment is exchanged solely for property of a like kind. A sale of property followed by a separate and unrelated purchase of property is not an "exchange" pursuant to section 1031. If petitioner's transfer and receipt of property were interdependent parts of an overall plan, the result of which was an exchange of like-kind properties, *137 section 1031 applies. Biggs v. Commissioner,69 T.C. 905, 914 (1978), affd. 632 F.2d 1171 (5th Cir. 1981). If the taxpayer sells property for cash and reinvests said cash in like-kind property, section 1031 does not apply, even if the taxpayer reinvests said cash just a few days after the sale. Starker v. United States,602 F.2d 1341, 1352 (9th Cir. 1979). Barker v. Commissioner,74 T.C. 555, 560-561 (1980). Petitioners contend that section 1031(a) applies because: 1) pursuant to their intent, the transfers were part of an overall plan; 2) the substance rather than the form of the transfers controls the tax consequences, and, in the present case, the substance of the transaction was the receipt of the Broadway property followed by the transfer of like-kind property, i.e., the El Camino property; 3) the step transaction doctrine supports a finding that they effected a like-kind exchange; 4) the transfers had to be an "exchange," and not a sale, because they did not have an unfettered right to the El Camino proceeds; and 5) the legislative intent of section 1031 supports their position. Respondent contends that *138 section 1031(a) does not apply because, pursuant to section 1031, petitioner did not "exchange" the El Camino property for the Broadway property. We agree with respondent. Petitioners' Intent
Petitioners transferred $175,000 to Shell via the Title Insurance escrow, and the Title Insurance escrow recorded the deed which conveyed the Broadway property from Shell to petitioners. Petitioners subsequently conveyed the El Camino property to the Leveys via the Founders escrow, and the Leveys transferred cash, which the Chartered Bank claimed as repayment for petitioners' loan, to the Founders escrow. Petitioners did not "exchange" like-kind property; [2] they conveyed the El Camino property for cash. Although petitioners contend that they intended to effect an exchange of like-kind properties, such an exchange did not occur. In fact, petitioners attempted to work out an exchange and were rebuffed by both Shell and the Leveys. Petitioners cite, inter alia, Alderson v. Commissioner,317 F.2d 790 (9th Cir. 1963), Starker v. United States,supra, and Biggs v. Commissioner,supra. *139 In each of those cases, the taxpayer's intent was coupled with the taxpayer's transfer of real property to a person who, or entity which, in turn, transferred real property to the taxpayer. See Alderson v. Commissioner,supra (taxpayer transferred California land to a person who transferred California land to the taxpayer); Starker v. United States,supra at 1342-1343 (taxpayer transferred Washington and Oregon land to Crown Zellerbach Corporation which transferred both real property and a contract right to purchase real property to the taxpayer); and Biggs v. Commissioner,supra (taxpayer transferred a Maryland farm to a person who transferred a contract right to purchase a Virginia farm to the taxpayer). In the present case, although petitioners intended to effect an exchange of like-kind property, they did not transfer the El Camino property to a person who transferred real property to them; they transferred the El Camino property to the Leveys for cash. Substance-Over-Form
the substance of a transaction in which the taxpayer sells property and immediately reinvests the proceeds in like-kind property is *140 not much different from the substance of a transaction in which two parcels are exchanged without cash. * * * Yet, if the exchange requirement is to have any significance at all, the perhaps formalistic difference between the two types of transactions must, at least on occasion, engender different results. [Barker v. Commissioner,supra at 561; citations omitted.] In the present case, the substance of the transaction was not such that "two parcels [were] exchanged without cash." Petitioners purchased the Broadway property and subsequently sold the El Camino property for cash. The substance of the transaction was a purchase followed by a sale. Step Transaction Doctrine
"The step-transaction doctrine is a particular manifestation of the more general tax law principle that purely formal distinctions cannot obscure the substance of a transaction." Superior Coach of Florida, Inc. v. Commissioner,80 T.C. 895, 905 (1983). The doctrine treats a series of separate steps as a single transaction if they are in substance integrated, interdependent *141 and aimed at a particular result. Superior Coach of Florida v. Commissioner,supra.
In the present case, petitioners did not convey their property to a person who, in turn, transferred real property to them. They conveyed the El Camino property to the Leveys who, in turn, transferred cash to them. Thus, the transfers fail the "exchange" requirement of section 1031 even if the transfers were integrated, interdependent and aimed at a particular result. Was It An "Exchange" Because Petitioners Did Not Have An Unfettered Right To The El Camino Proceeds?
Petitioners sold the El Camino property to the Leveys. They did not receive the sale proceeds; the Chartered Bank claimed said proceeds as repayment for the loan which petitioners obtained to purchase the Broadway property. An "exchange" occurs pursuant to section 1031 if a taxpayer transfers property to a person who transfers like-kind property to the taxpayer. See Alderson v. Commissioner,supra.
In the present case, regardless of whether petitioners received the proceeds from the *142 sale to the Leveys, or whether the Chartered Bank claimed the proceeds for repayment of petitioners' loan, petitioners did not convey the El Camino property for like-kind property; they conveyed it for cash. Legislative Intent
Petitioners contend that the legislative intent of section 1031 supports their position. Specifically, they state that an exchange of business or investment assets should not trigger recognition of gain or loss if a taxpayer is not "cashing in" his/her investment. Petitioners' argument does not persuade us. First, the statute (section 1031) requires an "exchange," and petitioners have not satisfied that requirement. Second, we have held that petitioners have sold/"cashed in" their investment in the El Camino property. Finally, in Starker v. United States,supra, a case upon which petitioners rely heavily, the Ninth Circuit stated: the "underlying purpose" of section 1031 is not entirely clear. The legislative history reveals that the provision was designed to avoid the imposition of a tax on those who do not "cash in" on their investments in trade or business property. Congress appeared to be concerned that taxpayers would *143 not have the cash to pay a tax on the capital gain if the exchange triggered recognition. This does not explain the precise limits of section 1031, however; if those taxpayers sell their property for cash and reinvest that cash in like-kind property, they cannot enjoy the section's benefits, even if the reinvestment takes place just a few days after the sale. Thus, some taxpayers with liquidity problems resulting from a replacement of their business property are not covered by the section. The liquidity rationale must therefore be limited. [Starker v. United States,supra at 1352.] Petitioners also contend that the Tax Reform Act of 1984 supports their position because the Tax Reform Act of 1984 permits non-simultaneous exchanges in certain circumstances. This argument does not affect our decision. We have held, supra, that petitioners did not satisfy the "exchange" requirement of section 1031; we have not held that section 1031 does not apply because the transfers were not simultaneous. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
2. See Lee v. Commissioner,T.C. Memo. 1986-294↩.