914 F.2d 265
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 Derrick WAKEHAM, Selma Wakeham Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 88-6696.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 7, 1990.
Decided Sept. 7, 1990.
 Before POOLE, CYNTHIA HOLCOMB HALL and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Selma and Derrick Wakeham appeal the district court's judgment that a series of real estate transactions they entered into did not qualify for tax exemption under 26 U.S.C. Sec. 1031.
 
 BACKGROUND
 
 3
 On April 3, 1978, the Wakehams signed escrow instructions in an attempt to acquire a 50-unit apartment complex in Carlsbad, California. ("Carlsbad" property). The sellers of the Carlsbad unit were Da-De and Vivian Wei Chiang. The escrow instructions contemplated the possibility that the transaction would be part of a tax-free exchange.
 
 
 4
 On September 29, 1978 the escrow instructions were amended to include Jerome M. Sattler as an additional buyer. Bayhall Venture was substituted for the Chiangs as the designated seller. Under the agreement the Carlsbad property would be divided up with the Wakehams acquiring a 77.77778% interest and Sattler acquiring a 22.22222% share. The agreement also listed possible tax-free exchange properties as:
 
 
 5
 3668 Marina (sic) Ave.
 
 
 6
 Santa Ana, CA ["Marine" property]
 
 And/or 2330 East Ball Road
 
 7
 Anaheim, CA ["Ball" property]
 
 
 8
 And/or 2619 Orion,
 
 
 9
 Santa Ana, CA ["Orion" property]
 
 
 10
 It was contemplated that purchasers would be found for the Marine, Ball and Orion properties prior to the Carlsbad closing date and that simultaneous transactions would take place between the Wakehams and Sattler, the purchasers of the three properties and Bayhall Venture. The escrow agent was to be notified which properties would be exchanged by November 17, 1978. The escrow was to close no later than November 28, 1978.
 
 
 11
 On November 17, 1978 the Carlsbad escrow instructions were amended to provide for alternative methods of closing:
 
 
 12
 1. Accept funds from Stewart Title Co. of Santa Ana, said funds being equity held by the undersigned in property known as 2330 East Ball Road, Anaheim, California, OR
 
 
 13
 2. To close this escrow (# 4279-C) without the close of the Santa Ana escrow, in which case escrow # 4279-C will close as a straight sale rather than an exchange.
 
 
 14
 The Wakehams were unable to secure the sales of the Ball, Orion or Marine properties prior to November 28, 1978. Instead, to effect the Carlsbad sale, they obtained short-term swing loans from Crocker National Bank. The loan documents did not specifically designate what the proceeds would be used for. However, the funds were deposited directly into the escrow. The loans were secured by deeds of trust on the Ball, Marine and Orion properties as well as the Wakehams' residence. On November 28, 1978, the Wakehams used the proceeds from the loans and a promissory note to acquire the Carlsbad property.
 
 
 15
 The Wakehams sold the Ball, Orion and Marine properties in December 1978, April 1979 and May 1979, respectively. The net proceeds after satisfying the loans used to purchase the Carlsbad properties and various other charges were, in the order sold, $38,510.65, $35,952.63 and $35,131.99. The Wakehams used this surplus to repay the loan secured by their personal residence.
 
 
 16
 For the taxable year 1978, the Wakehams filed a return on April 15, 1979 treating the disposition of the Ball property as a taxable sale. They filed an amended return on February 4, 1982, reassessing the sale as a tax-free like-kind exchange. As a result of the like-kind status, the Wakehams sought a refund of $20,906.00. On June 5, 1984, the IRS denied the refund claim stating that the sale of the Ball property did not qualify under Section 1031 because "the property was not exchanged either solely or partly for property in kind."
 
 
 17
 For the taxable year 1979, the Wakehams first treated the sales of the Orion and Marine properties as taxable sales but then filed an amended return treating those dispositions as tax-free like-kind exchanges. The amended return claimed a total refund of $26,079.00. In October 1981, the Wakehams received a refund of that sum, plus interest.
 
 
 18
 On December 10, 1984, a demand was made by the IRS for repayment of the 1979 tax refund in the total amount of $60,644.27. The Wakehams paid all of the tax and part of the interest on March 10, 1986. On November 14, 1986 they filed a claim for refund of that amount. The IRS denied the claim and the Wakehams filed the instant suit.[1]
 
 
 19
 After considering the stipulated facts and the parties' arguments on the briefs, the district court found that the sales were not like-kind exchanges but rather separate, independent transactions. Accordingly, it dismissed the Wakehams' complaint with prejudice on September 26, 1988. The judgment was entered on September 28, 1988 and the Wakehams timely appealed on November 28, 1988. This court has jurisdiction under 28 U.S.C. Sec. 1291.
 
 STANDARD OF REVIEW
 
 20
 The trial court's conclusion that the Wakehams' transactions did not constitute a like-kind exchange within the meaning of 26 U.S.C. Sec. 1031 is legal in nature and as a result is entitled to de novo review by this court. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984).
 
 DISCUSSION
 
 21
 26 U.S.C. Sec. 1031(a) is an exception to the general rule requiring recognition of gain or loss upon the sale or exchange of property. Under 26 U.S.C. Sec. 1031(a) if property held for productive use is exchanged for like-kind property, the taxable gain is not realized until the acquired property is disposed.[2] The sole question presented for review is whether the Wakehams exchanged the Ball, Orion and Marine properties for the Carlsbad property.[3]
 
 
 22
 The Wakehams make essentially three arguments to support an exchange: (1) the Ball, Orion, Marine and Carlsbad transactions were mutually interdependent; (2) they did not "cash in" on the Ball, Marine and Orion properties; (3) the controlling element in this case is the intent underlying the transactions and they intended to effect a like-kind exchange. All three arguments are without merit.
 
 
 23
 The reasoning behind an exchange is mutual dependency--the reciprocal transfer of property. See, e.g., Bezdjian v. Commissioner of Internal Revenue Service, 53 T.C.M. (CCH) 368 (1987), aff'd, 845 F.2d 217 (9th Cir.1988); Starker v. United States, 602 F.2d 1341 (9th Cir.1979); Leslie Co. v. Commissioner of Internal Revenue Service, 539 F.2d 943, 949 (3rd Cir.1976); Carlton v. United States, 385 F.2d 238 (5th Cir.1967). The Wakehams' transactions did not constitute an "exchange" within the meaning of Section 1031 because the transactions were not mutually interdependent nor did they constitute the reciprocal transfer of property. Moreover, mere intent to effect a like-kind exchange does not render the transaction tax free.
 
 A. Interdependence
 
 24
 Courts have not limited a Section 1031 exchange to a two-party transaction. Properly structured multi-party transactions can qualify for tax-free treatment. Alderson v. Commissioner, 317 F.2d 790, 793-795 (9th Cir.1963). Further, this circuit has held that a like-kind exchange need not occur simultaneously. Starker v. United States, 602 F.2d 1341, 1354-1355 (9th Cir.1979). However, in order to qualify for tax deferred treatment in a multi-party transaction there must be mutually interdependent contracts which are part of an integrated plan. See Biggs v. Commissioner of Internal Revenue Service, 632 F.2d 1171, 1178 (5th Cir.1980) (taxpayer was entitled to tax deferred treatment under Section 1031 where all transactions were interdependent and culminated in an exchange rather than a sale and a separate purchase); Lee v. Commissioner of Internal Revenue, 51 T.C.M. (CCH) 1438 (1986) (no like-kind exchange where a purchase and sale were executed via independent escrows although the sales proceeds were applied to the purchase price); Rogers v. Commissioner, 44 T.C. 126, 133-134 (1965), aff'd per curiam, 377 F.2d 534 (9th Cir.1967) (no like-kind exchange where property was sold before exchange took place).
 
 
 25
 The Wakehams argue the Carlsbad and three individual property transactions were mutually interdependent. They assert that the fact that they obtained a swing loan does not make this a cash transaction as the essence of a swing loan is to bridge an economic gap between two mutually dependent transactions. However, contrary to the allegation of mutual interdependence, the Carlsbad purchase does not appear to have been dependent upon the sale of the other three properties. Bayhall Venture's receipt of its funds was in no way tied to the sale of the three individual properties. It appears to have received cash for the Carlsbad property and was then out of the picture. Nor were the sale of the other three properties dependent upon the Carlsbad sale.
 
 
 26
 Although the Wakehams argue that the swing loans somehow make the transactions interdependent, they failed to produce any evidence that the bank in any way restricted the use of the loans to the purchase of the Carlsbad property. Further, there is no evidence that the repayment of the loans had to come from the sale of the three properties. The bank would have been satisfied with repayment regardless of the source.
 
 
 27
 The escrow expressly provided if buyers were not found prior to the Carlsbad closing date then the Carlsbad escrow would close as a "straight sale rather than an exchange." The sales of the Ball, Orion and Marine properties were not consummated by the closing date. In an effort to close the Carlsbad deal, the Wakehams obtained short-term swing loans from the Crocker National Bank and closed in a straight sale manner.
 
 B. Reciprocal Transfer
 
 28
 Appellants further argue that they did not cash-in their investment and therefore these transactions constitute like-kind exchanges. In the business venture context, the venture should continue after the exchange without any real economic change and without realization of any cash. Carlton v. United States, 385 F.2d 238, 242 (5th Cir.1967) ("[t]he very essence of an exchange is the transfer of property between owners, while the mark of a sale is the receipt of cash for the property"). One who sells property for cash and reinvests that cash in like-kind property is not covered by Section 1031 even if the reinvestment takes place just a few days after the sale. Bezdjian, 845 F.2d at 218-219; Starker 602 F.2d at 1352; Carlton, 385 F.2d at 241; Rogers v. Commissioner, 44 T.C. 126, 133 (1965), aff'd per curiam, 377 F.2d 534 (9th Cir.1967). Here, the Wakehams paid cash to obtain the Carlsbad property and received cash from the sale of the Ball, Orion and Marine properties. Although the Wakehams argue that they did not "cash in," there is no evidence that either the Bayhall Venture or the three individual purchasers exchanged anything but cash for real property.
 
 
 29
 In Bezdjian v. Commissioner of Internal Revenue Service, 53 T.C.M. (CCH) 368 (1987) aff'd 845 F.2d 217 (9th Cir.1988), this court considered facts substantially similar to those at issue in the instant case and concluded that no like-kind exchange took place. In that case, Shell Oil Company offered to sell the Bezdjians a gas station known as "the Broadway property." In an effort to close the deal, the Bezdjians offered to exchange their El Camino property for the Broadway parcel. Shell refused the exchange offer and instead insisted on a cash transaction.
 
 
 30
 As in this case, a buyer could not be found for the El Camino property prior to the closing of the Shell escrow. The Bezdjians obtained a loan secured by a deed of trust on their residence and the El Camino property and used the proceeds of the loan to buy the Broadway property. The bank transferred the funds directly into the escrow. The funds were then transferred to Shell and title transferred to the Bezdjians.
 
 
 31
 Approximately three weeks later, the Bezdjians agreed to sell the El Camino property to the Leveys. Another escrow was opened to facilitate the sale of that property. The Leveys assumed the mortgage and paid the remainder of the purchase price in cash. The cash portion of the purchase price was deposited into the second escrow. A deed was then issued to the Leveys. Escrow funds were disbursed to the bank to repay the loan taken out by the Bezdjians in connection with the Broadway property.
 
 
 32
 The Bezdjians treated the transactions as a like-kind exchange under Section 1031. The Internal Revenue Service characterized the transaction as a taxable separate purchase and sale and notified the Bezdjians of their tax deficiency. The Bezdjians filed a civil action and the tax court ordered the petitioners to pay the deficiency, finding there was no like-kind exchange. The Bezdjians appealed and this court affirmed, holding:
 
 
 33
 While the Bezdjians may have wanted to structure such an exchange, there is no evidence that Shell or the Leveys agreed to participate in one. Moreover, the record indicates that the Bezdjians neither conveyed real property to Shell in exchange for the Broadway property nor received real property from the Leveys in exchange for the El Camino property. We conclude there was no exchange of property of a like kind.
 
 
 34
 Bezdijan, 845 F.2d at 219.
 
 
 35
 As in Bezdjian, the taxpayers in this case failed to understand that the essence of a Section 1031 transaction is an "exchange" of property or an interest in property for other property of a like-kind. Here, Bayhall Venture was willing to structure the transaction such that the deal could be consummated with funds from the sale of the three properties owned by the Wakehams. However, it was not willing to make the sale dependent upon such funding. The escrow expressly provided if buyers were not found prior to the Carlsbad closing date then the Carlsbad escrow would close as a "straight sale rather than an exchange."
 
 
 36
 The Wakehams argue that Starker v. United States, 602 F.2d 1341 (9th Cir.1979), supports their argument that a like-kind exchange took place. However, Starker is inapposite. In that case, the court found a like-kind exchange was effectuated where Starker exchanged property for a third-party purchaser's rights to like-kind property. The court in Starker held that the rights to the property amounted to a fee interest and as such, an exchange of like-kind property had in fact taken place. The Starker court distinguished between receipt of cash and reciprocal transfer of like-kind property and found there was a reciprocal transfer of property.
 
 
 37
 In contrast, no such exchange of property took place between Bayhall Venture and the Wakehams or the three individual purchasers and the Wakehams. As in Bezdjian, Bayhall Venture was paid in cash from the proceeds of the loans. Later, the three individual purchasers paid cash for the parcels they obtained. There is no indication that any of these transactions were reciprocal. Bayhall Venture did not acquire an interest in the three individual properties nor did the individual purchasers acquired an interest in Carlsbad.
 
 C. Intent
 
 38
 While the Wakehams may have wanted to structure a tax free exchange, mere intent does not render the transaction tax free. Carlton v. United States, 385 F.2d 238, 243 (5th Cir.1967) (and cases cited). The substance of a transaction and not the end result determines a transaction's tax consequences. Carlton, 385 F.2d at 241-243. See also Bezdjian v. Commissioner of Internal Revenue Service, 53 T.C.M. (CCH) 368 (1987), aff'd, 845 F.2d 217 (9th Cir.1988). The Wakehams' intent to effectuate a like-kind exchange does not turn otherwise independent transactions into tax-free interdependent ones.
 
 CONCLUSION
 
 39
 The Crocker National Bank lent the Wakehams cash with which they purchased the Carlsbad property. They repaid these loans with the proceeds from the sale of the three individual properties. The Wakehams neither conveyed real property to Bayhall Venture in exchange for the Carlsbad property nor received real property from any of the three individual purchasers for the Orion, Marine and Ball parcels. In light of the foregoing, no like-kind exchange took place between the parties. The judgment of the district court is hereby AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In this suit, the Wakehams seek $20,906.00 plus interest and attorney's fees for the 1978 tax year and $26,079.00 plus interest and attorney's fees for the 1979 tax year
 
 
 [2]
 26 U.S.C. Sec. 1031(a) provides:
 No gain or loss shall be recognized on the exchange of property held for productive use in a trade or business or for investment if such property is exchanged solely for property of like kind which is to be held either for productive use in trade or business or for investment.
 
 
 [3]
 The United States does not contest that the three individual properties and the Carlsbad properties are "like kind" within the meaning of the statute, nor that those properties were held for "productive use in a trade or business or for investment."