T.C. Memo. 1995-477


UNITED STATES TAX COURT


JULIUS AND HANAN DIBSY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16466-93.                    Filed October 4, 1995.


Julius Dibsy, pro se.

<u>Roy Wulf</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GERBER, <u>Judge</u>:  Respondent determined a deficiency in petitioners' 1989 Federal income tax of $34,079 and additions to tax under sections 6654[1] and 6662(a) in the amounts of $191 and $6,816, respectively.  The issues for our consideration are:  (1)

---

[1] All section references are to the Internal Revenue Code in effect for the taxable year under consideration, and all Rule references are to this Court's Rules of Practice and Procedure, unless otherwise indicated.

Whether petitioners are entitled to defer, as a like-kind exchange, the income realized on the sale of their liquor store; (2) whether petitioners are liable for the addition to tax for failure to make estimated income tax payments; and (3) whether petitioners are liable for the addition to tax for substantial understatement of income tax.

## FINDINGS OF FACT

Petitioners, at all pertinent times, were married, and they resided in Westminster, California, at the time their petition in this case was filed. Julius and Hanan Dibsy (petitioners) have been in the business of owning and operating liquor stores. On January 17, 1986, petitioners purchased a liquor store in Huntington Beach, California, from William D. Hanshaw (Hanshaw). Petitioners changed the name of the store from "Hoovs Hut Liquor #4" to "Sunshine Liquor". Petitioners paid $210,000 for the noninventory assets of Sunshine Liquor.

During 1988, petitioners entered into discussions with Hanshaw about obtaining a store with a larger volume of sales. Petitioners learned that Hanshaw might sell "Bayshore Liquor", a liquor store located in Seal Beach, California. Consequently, petitioners immediately listed Sunshine Liquor for sale. On or about March 23, 1988, they entered into an agreement to sell the noninventory assets of Sunshine Liquor to Sathit and Supin Sathavoran. On March 31, 1988, petitioners agreed to purchase Bayshore Liquor from Hanshaw, and they gave him $10,000 in

"earnest money".  On or about August 16, 1988, the Sathavorans notified petitioners that they would not purchase Sunshine Liquor.

Petitioners requested that Hanshaw release them from the purchase of Bayshore Liquor.  Hanshaw refused to return the $10,000 "earnest money" and also refused to purchase Sunshine Liquor from petitioners.  However, Hanshaw allowed petitioners to defer payment of a portion of the purchase price for Bayshore Liquor by petitioners' issuing a note to Hanshaw in the amount of $150,000 plus interest, which was secured by the assets of Sunshine Liquor.

On October 5, 1988, petitioners purchased Bayshore Liquor from Hanshaw for $434,593.82.  Petitioners financed the purchase as follows:

| | |
|---|---|
| Seller | $50,861.94 |
| Demand note | 75,000.00 |
| Note to Hanshaw[1] | 150,000.00 |
| Credits through escrow | 1,863.81 |
| Check | 156,868.07 |
| Total | 434,593.82 |

[1] The note was due in 1 year, or upon the earlier sale of Sunshine Liquor.

On March 31, 1989, petitioners sold Sunshine Liquor to Mr. and Mrs. Nam Kyun and Sun Cha Shin for $286,423.63.  This price was allocated as follows:

| | |
|---|---|
| Inventory | $39,827.71 |
| Other store assets | 242,500.00 |
| Lease deposit adjustment | 3,800.00 |
| Other | 295.92 |
| Total | 286,423.63 |

Petitioners then disbursed the funds from the sale as follows:

| | |
|---|---:|
| Payment of note to W. Hanshaw | $46,641.16 |
| Interest on above note to Hanshaw[1] | 108.83 |
| Payment of note to W. Hanshaw | 158,850.00 |
| Interest on above note to Hanshaw | 900.15 |
| Note to petitioners from purchasers | 43,150.00 |
| Inventory service | 249.14 |
| Escrow and closing costs | 1,639.55 |
| Creditors' claims paid | 8,843.38 |
| State Board of Equalization | 19,483.57 |
| Payoffs of preexisting loans | 6,557.85 |
| Total | 286,423.63 |

[1] We assume that "W. Hanshaw" and "Hanshaw" are both one and the same person discussed elsewhere.

In connection with Sunshine Liquor, petitioners claimed a total of $100,547 as depreciation and amortization expenses during 1986, 1987, and 1988. Their basis in the noninventory of Sunshine Liquor was $109,453 on March 31, 1989. The selling price of these assets was $242,500.

From October 5, 1988, until March 31, 1989, petitioners operated both Sunshine Liquor and Bayshore Liquor, and they were entitled to any profits earned by either store. The parties agree that if section 1031 does not apply to the disposition of Sunshine Liquor, then petitioners must recognize a long-term capital gain of $133,047 on the transaction.

OPINION

Respondent concluded that the purchase of one liquor store and subsequent sale of another by petitioners were two separate taxable events. Accordingly, respondent determined that

petitioners should have reported a long-term capital gain from the sale of Sunshine Liquor.  Petitioners agree that, in form, a separate sale and purchase occurred.  They contend, however, that, in substance and when considered together, the transactions resulted in a section 1031 like-kind exchange.  Petitioners' failure to include the capital gain as income is justified if section 1031 is applicable.

Section 1001(c) generally requires that the entire amount of gain or loss on the sale or exchange of property shall be recognized.  Section 1031(a)(1), however, provides for the nonrecognition of such gain or loss when "property held for productive use in a trade or business or for investment * * * is exchanged solely for property of like kind which is to be held either for productive use in a trade or business or for investment."

The parties disagree on whether petitioner "exchanged" Sunshine Liquor for Bayshore Liquor.[2]  Petitioners bear the burden of establishing that respondent's determination is erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Essentially, section 1031 assumes that new property received in an exchange is "'substantially a continuation of the old

---

[2] For reasons that will become clear, we find it unnecessary to address whether Bayshore Liquor and Sunshine Liquor were property of like kind within the meaning of sec. 1031.

investment'".  Commissioner v. P.G. Lake, Inc., 356 U.S. 260, 268 (1958) (quoting section 39.112(a)-1), Income Tax Regs. (promulgated under the Internal Revenue Code of 1939), and analyzing a tax-free exchange under section 112(b)(1) of the 1939 Code, a predecessor of section 1031).  In an exchange of like-kind property, "the taxpayer's economic situation after the exchange is fundamentally the same as it was before the transaction occurred."  Koch v. Commissioner, 71 T.C. 54, 63 (1978).  The U.S. Court of Appeals for the Fourth Circuit in Coastal Terminals, Inc. v. United States, 320 F.2d 333, 337 (4th Cir. 1963), stated:

> The purpose of Section 1031(a), as shown by its legislative history, is to defer recognition of gain or loss when a direct exchange of property between the taxpayer and another party takes place; a sale for cash does not qualify as a nontaxable exchange even though the cash is immediately reinvested in like property.

See also Magneson v. Commissioner, 753 F.2d 1490, 1494 (9th Cir. 1985), affg. 81 T.C. 767 (1983);[3] Starker v. United States, 602 F.2d 1341, 1352 (9th Cir. 1979).  In Barker v. Commissioner, 74 T.C. 555, 561 (1980), this Court noted:

> The "exchange" requirement poses an analytical problem because it runs headlong into the familiar tax

---

[3] The case law, the regulations and the legislative history are thus all in agreement that the basic reason for nonrecognition of gain or loss on transfers of property under sec. 1031 is that the taxpayer's economic situation after the transfer is fundamentally the same as it was before the transfer: his money is still tied up in investment in the same kind of property.  Magneson v. Commissioner, 753 F.2d 1490, 1494 (9th Cir. 1985); affg. 81 T.C. 767 (1983).

law maxim that the substance of a transaction controls over form.  In a sense, the substance of a transaction in which the taxpayer sells property and immediately reinvests the proceeds in like-kind property is not much different from the substance of a transaction in which two parcels are exchanged without cash.  Bell Lines, Inc. v. United States, 480 F.2d 710, 711 (4th Cir. 1973).  Yet, if the exchange requirement is to have any significance at all, the perhaps formalistic difference between the two types of transactions must, at least on occasion, engender different results.  Accord, Starker v. United States, 602 F.2d, 1341, 1352 (9th Cir. 1979).

Courts have afforded some latitude in structuring exchange transactions.  See, e.g., Magneson v. Commissioner, supra (change in mechanism of ownership which does not significantly affect amount of control or nature of underlying investment does not preclude a tax-free exchange); Starker v. United States, supra at 1354-1355 (the transfers need not occur simultaneously);[4] Alderson v. Commissioner, 317 F.2d 790, 793 (9th Cir. 1963), revg. 38 T.C. 215 (1962) (parties can amend previously executed sales agreement to provide for an exchange); Barker v. Commissioner, supra at 562 (a party can hold transitory ownership solely for the purpose of effectuating an exchange); Biggs v. Commissioner, 69 T.C. 905, 913-914 (1978); affd. 632 F.2d 1171 (5th Cir. 1980) (multiple parties can be involved in an exchange with parties not owning any property at the time of entering into

[4] In 1984, sec. 1031 was amended by the enactment of sec. 1031(a)(3) to permit nonsimultaneous exchanges under certain limited circumstances.  This provision is more restrictive in that regard than the decision in Starker v. United States, 602 F.2d 1341, 1352 (9th Cir. 1979).

an agreement to exchange); 124 Front Street, Inc. v. Commissioner, 65 T.C. 6, 17-18 (1975) (taxpayer can advance money toward purchase price of property to be exchanged); Coupe v. Commissioner, 52 T.C. 394, 405, 409 (1969) (the taxpayer can locate and negotiate for the property to be acquired); J.H. Baird Publishing Co. v. Commissioner, 39 T.C. 608, 615 (1962) (the taxpayer can oversee improvements on the land to be acquired); Mercantile Trust Co. v. Commissioner, 32 B.T.A. 82, 87 (1935) (alternative sales possibilities are ignored where conditions for an exchange are manifest and an exchange actually occurs). Provided the final result is an exchange of property for other property of a like kind, the transaction may qualify under section 1031.[5]

However, courts have discerned boundaries in the interpretation and application of section 1031. In Barker v. Commissioner, 74 T.C. at 563-564, we recognized that

> at some point the confluence of some sufficient number of deviations will bring about a taxable result. Whether the cause be economic and business reality or poor tax planning, prior cases make clear that taxpayers who stray too far run the risk of having their transactions characterized as a sale and reinvestment.

Other courts have acknowledged that transactions that take the form of a cash sale and reinvestment cannot, in substance, constitute an exchange for purposes of section 1031, even though

---

[5] Biggs v. Commissioner, 69 T.C. 905, 914 (1978); affd. 632 F.2d 1171 (5th Cir. 1980).

the end result is the same as a reciprocal exchange of properties. Bell Lines, Inc. v. United States, 480 F.2d 710, 714 (4th Cir. 1973); Carlton v. United States, 385 F.2d 238, 241 (5th Cir. 1967). Thus, our inquiry here focuses on whether petitioner's disposition of Sunshine Liquor was a sale, as argued by respondent, or an exchange, as argued by petitioner.

In Bezdjian v. Commissioner, 845 F.2d 217 (9th Cir. 1988), affg. T.C. Memo 1987-140, the taxpayers received an oil company's offer to sell a gas station that the taxpayers operated under a lease. The oil company refused to accept a rental property owned by the taxpayers in exchange and, instead, insisted on a cash transaction. The taxpayers consented and bought the gas station with the proceeds of a loan that was secured by a deed of trust on their residence and the rental property. About 3 weeks after the gas station was conveyed to the taxpayers, they sold the rental property to a third party who assumed a mortgage and paid the remainder of the price in cash. The taxpayers treated these transactions as a like-kind exchange governed by section 1031 on their 1978 tax return.

The U.S. Court of Appeals for the Ninth Circuit explained that there was no "exchange" under the meaning of section 1031. The court found that the taxpayers failed to understand that the parties involved must make an exchange of property or an interest in property for other property of a like kind in order for the transaction to qualify for nonrecognition. The court also found

no proof that either party evidenced an intention to make an exchange. "The fact that the * * * [taxpayers] intended the * * * [new] parcel to replace the * * * [old] property in their holdings does not render their transactions an exchange." Id. at 218.

Petitioners' factual circumstances are indistinguishable from Bezdjian v. Commissioner, supra. In both cases, there was a desire to purchase property and a need to dispose of like-kind property to finance the acquisition. In both cases, there was an inability to find a buyer for the original property and a purchase of the new property before the original property could be sold. In both instances, there was a borrowing against the original property to finance the purchase of the new property, and neither set of taxpayers received cash in hand from the sale of the original property.

The facts here support respondent's position that petitioners possessed indicia of ownership of both Bayshore Liquor and Sunshine Liquor. If petitioners had been unable to sell Sunshine Liquor, they would still have been liable to Hanshaw on the note they gave him to finance their purchase of Bayshore. Likewise, petitioners were legally entitled to keep Sunshine Liquor in any event. Petitioners were liable to Hanshaw for the outstanding debt, but they were not otherwise bound to sell Sunshine Liquor. Furthermore, petitioners simultaneously operated Sunshine Liquor and Bayshore Liquor from October 5,

1988, until March 31, 1989, when they finally sold Sunshine Liquor. They kept the profits and losses from both businesses. These circumstances do not reflect or otherwise show the existence of a tax-free exchange under section 1031.

The purchase of Bayshore Liquor and the subsequent sale of Sunshine Liquor were not structured as a section 1031 exchange. The escrow documents do not refer to a section 1031 exchange. There is no indication that this transaction was intended to be a section 1031 exchange. Additionally, it does not appear that the ultimate purchasers of Sunshine Liquor were aware that a section 1031 exchange was intended. There is no evidence that petitioners relied on section 1031 until they filed their 1989 Federal income tax return.

Petitioners apparently argue that Hanshaw was the de facto owner of Sunshine Liquor at the time of the sale because part of the proceeds from petitioners' sale of Sunshine Liquor were utilized to pay off the debt incurred and owed to Hanshaw. In other words, petitioners appear to contend that they had previously accomplished a section 1031 exchange with Hanshaw and were merely his "agents" in the sale of Sunshine Liquor. This gloss on Hanshaw's role is not confirmed by the record. Hanshaw refused to purchase Sunshine Liquor from petitioners when the Sathavorans reneged on the agreement to purchase the store. Hanshaw did not have any rights other than those granted to him by petitioners' note. Hanshaw was only a creditor of

petitioners.  Petitioners retained title and equity in Sunshine Liquor until they sold it.

Petitioners' argument implies that an intent on their part to undertake an exchange should be sufficient to bring the transactions within the ambit of section 1031.  We cannot agree.  Although intent can be relevant in determining what events transpired, it is not sufficient to cause these transactions to fall within section 1031.  Garcia v. Commissioner, 80 T.C. 491, 498 (1983); Biggs v. Commissioner, 69 T.C. 905, 915 (1978).  Rather these transactions constitute a purchase and subsequent sale.

We hold that the transactions here are properly characterized as a purchase followed by a sale.  Accordingly, there was no exchange within the meaning of section 1031.

Section 6654 provides an addition to tax for the failure to pay estimated income tax.  This addition to tax is mandatory unless petitioners demonstrate that they come within one of the computational exceptions of section 6654(e).  The addition to tax is imposed regardless of reasonable cause or extenuating circumstances.  Dodge v. Commissioner, 96 T.C. 172, 183 (1991), affd. in part and revd. in part 981 F.2d 350 (8th Cir. 1992); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).  Furthermore, they have not demonstrated that they come within any exception or that they had reasonable cause or extenuating circumstances.  Petitioners failed to make any estimated tax

payments in 1989.  Therefore, respondent's determination is sustained.

We next consider whether petitioners are liable for the addition to tax for substantially understating their income tax. Sec. 6662(b)(2).  A substantial understatement is one that exceeds the greater of 10 percent of the tax required to be shown or $5,000.  Sec. 6662(d)(1).  Any understatement is reduced by an item that is adequately disclosed or for which there was substantial authority for its tax treatment.

Petitioners' failure to report the gain from the sale of Sunshine Liquor resulted in a $34,079 understatement of income tax.  This amount is in excess of $5,000, and exceeds 10 percent of the amount of tax required to be shown on the return.

Next, we must decide if petitioners adequately disclosed their position or had substantal authority.  Section 6662(d)(2)(B)(ii) defines a disclosed item as one regarding which "the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return".  The statute does not set forth what constitutes adequate disclosure of relevant facts.  Schirmer v. Commissioner, 89 T.C. 277, 285 (1987).  Under generally applicable regulatory authority, however, respondent may prescribe the form of such disclosure.  H. Conf. Rept. 97-760 (1982), 1982-2 C.B. 600, 650; Schirmer v. Commissioner, supra at 285.

Even where a taxpayer fails to comply with the methods set forth by the regulations, this Court has indicated that a taxpayer may also satisfy the requirements of adequate disclosure for purposes of section 6662 if he provides sufficient facts on the face of his return that enable respondent to identify the potential controversy involved.  Schirmer v. Commissioner, supra at 286.  We hold that petitioners have satisfied the adequate disclosure requirement.

Petitioners properly completed their 1989 Federal income tax return identifying the property in question, the amount of gain involved, and the facts affecting the tax treatment.  Furthermore, on the face of petitioners' return there are only two items reported: (1) Business income generated by a liquor store as reported on Schedule C, and, (2) a transaction involving the same liquor store which produced zero capital gain as reported on Schedule D.  It appears likely that the items reported generated respondent's audit.  The information reported was sufficient to apprise respondent of and enable respondent to identify the potential controversy involved here, that is, whether petitioners actually engaged in a tax-free exchange.  We hold that petitioners have adequately disclosed the relevant facts relating to the questioned transaction.

We hold that petitioners are not liable for the addition to tax under section 6662(a).

To reflect the foregoing,

- 15 -

Decision will be entered for respondent as to the deficiency and addition to tax under sec. 6654, and for petitioners as to the addition to tax under sec. 6662(a).