**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-18

UNITED STATES TAX COURT

THOMAS WESLEY ALEXANDER AND SYLVIA ALEXANDER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1764-12S. Filed February 26, 2014.

<u>Walter B. Smith</u>, for petitioners.

<u>Jeremy D. Cameron</u> and <u>Peter T. McCary</u>, for respondent.

SUMMARY OPINION

DEAN, <u>Special Trial Judge</u>: This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was filed.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any

other court, and this opinion shall not be treated as precedent for any other case.

Unless otherwise indicated, subsequent section references are to the Internal

Revenue Code in effect for the year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent issued a statutory notice of deficiency to petitioners for 2009 in which he determined a deficiency in income tax of $14,165 and an accuracy-related penalty under section 6662(a) of $2,833.

The issues for decision are whether petitioners: (1) failed to report as income a taxable retirement distribution from a simplified employee pension (SEP) individual retirement account (IRA); (2) are liable for the 10% additional tax under section 72(t); and (3) are liable for the accuracy-related penalty under section 6662(a).[1]

A few of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received in evidence are incorporated herein by reference. Petitioners resided in Florida when the petition was filed.

## Background

Petitioners timely filed their Federal income tax return for 2009. Thomas Alexander (petitioner) is a licensed electrical contractor. In 2009 petitioner was working with True Craft Construction (True Craft), a general contractor, on two

[1]The limitation, if any, of petitioners' itemized deductions under sec. 68 and the amount, if any, of petitioners' making work pay credit under sec. 36(a) are computational and will be resolved by the decision of the Court on other issues.

large commercial developments. During 2009 True Craft suffered some business difficulties that caused it to fail to pay petitioner timely about $130,000 that he was due for work on the two projects.

One of the True Craft principals proposed to petitioner that he would give petitioner a promissory note for the $130,000, and he would assign to petitioner a piece of real estate (property) that he owned as security for the debt. But there was a catch: The property was burdened with a past-due mortgage and was subject to imminent foreclosure. Petitioner would have to pay SunTrust Bank (SunTrust) $36,000 to stop the foreclosure and thus the loss of the property that was to be his security.

Petitioner had an SEP-IRA with Charles Schwab & Co., Inc. (Schwab), that was handled by a Schwab employee by the name of Peter Hoag in Denver, Colorado. Petitioner considered Hoag to be his financial adviser, at least as far as his SEP-IRA was concerned. Hoag suggested that petitioner get a loan from Charles Schwab of $36,000 to pay SunTrust in order to halt foreclosure on the property. Because the loan could not be processed until after the foreclosure date, Hoag suggested that petitioner first withdraw the funds from the SEP-IRA. At the time, petitioner's SEP-IRA was worth $48,000 to $50,000. Hoag advised petitioner that if he replaced the money from the SEP-IRA with the loan proceeds

before a certain time, 60 days, there would be "no penalty with anybody". Hoag told petitioner that the loan would be approved within 30 to 45 days.

Petitioner, who had not yet turned 59-1/2, had Hoag wire $36,000 (distribution) from his SEP-IRA account into his credit union checking account on July 31, 2009. No Federal tax was withheld from the distribution. Petitioner wrote a check to SunTrust from his credit union account to stop the foreclosure and received a promissory note from True Craft for $130,000.

There was some delay in the loan process, which was handled by another office of Schwab in Jacksonville, Florida. Petitioner received the loan proceeds on Wednesday, September 30, 2009. He then mailed a personal check for $36,000 to the SEP-IRA account, probably on October 1, 2009, that was deposited into the SEP-IRA account on Monday, October 5, 2009, 66 days after the funds were withdrawn.

In January 2010 petitioner received from Schwab a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting a gross distribution of $36,000. The form bears a code indicating that the distribution is an early distribution, but it does not indicate a taxable amount.

## Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that those determinations are erroneous.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a).  The Court finds that petitioners have not argued or shown that they have met the requirements of section 7491(a)(1).  Therefore, the burden of proof does not shift to respondent.

Respondent issued a notice of deficiency to petitioners determining that they had failed to report the receipt of the distribution for 2009.  Respondent at the time of trial took the position that, with certain exceptions not here pertinent, amounts paid or distributed from an individual retirement plan must be included in gross income by the payee or distributee.  In addition, respondent argued that if the beneficiary of an IRA uses any portion of the account as security for a loan, that portion is treated as a distribution to the individual.

Petitioners analyze this case in terms of whether petitioner effected a "rollover" of the withdrawn funds or, secondarily, a loan from his qualified employer plan that qualifies as a nontaxable distribution.

## Whether There Was a Rollover

A trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries is an "individual retirement account" if it meets the requirements of section 408(a). An SEP[2] is an individual retirement account or individual retirement annuity that meets the requirements of section 408(k). Sec. 408(k)(1). With certain enumerated exceptions, any amount paid or distributed by an individual retirement plan must be included in the gross income of the payee or distributee as provided by section 72. Sec. 408(d)(1).

Rollover contributions are an exception to the inclusion of SEP distributions in the income of payees or distributees. An amount is a rollover contribution if it meets the requirements of section 408(d)(3). As is pertinent here, if an amount is distributed from an individual retirement account or annuity to the individual for whom the account is maintained, and the entire amount is paid into an individual retirement account, annuity, or eligible retirement plan for the benefit of the individual not later than the 60th day after the day on which he receives the distribution, it is a rollover excepted from inclusion in income. Sec. 408(d)(3)(A).

---

[2]In addition to individual retirement accounts, sec. 408(b) and (c) allows for individual retirement annuities and accounts established by employers and certain associations of employees.

Petitioners argue that despite the fact that their personal check was deposited into the SEP-IRA account on October 5, 2009, 66 days after the funds were withdrawn, there was nevertheless a rollover because Schwab caused a delay in the loan. Petitioners may be attempting to analogize their situation with that of the taxpayers in Wood v. Commissioner, 93 T.C. 114 (1989).

In Wood the taxpayer retired and received a lump-sum distribution of cash and stocks from his employer's profit-sharing plan. He established an IRA with Merrill Lynch and instructed the account executive to transfer the entire distribution into the IRA to effect a nontaxable transfer of the funds.

The account executive assured the taxpayer that the transfer would be made within the applicable 60-day period. The cash and stock were transferred into the IRA within the 60-day rollover period, but because of a bookkeeping error the stock transfer was erroneously indicated as not having occurred until after the rollover period had elapsed.

The Court found that when bookkeeping "entries are at variance with the facts, the decision must rest on the facts." Id. at 121 (citing Dean v. Commissioner, 57 T.C. 32, 44 (1971), Kaplan v. Commissioner, 21 T.C. 134, 140 (1953), Lanteen Med. Labs., Inc. v. Commissioner, 10 T.C. 279, 288 (1948), and Elkins v. Commissioner, 12 B.T.A. 1058 (1928)).

Petitioners' case is not like Wood. The $36,000 was not in fact deposited within the statutorily prescribed 60-day period; any "error" that may have been committed by Schwab was not a bookkeeping error.

Although petitioners argue that their intent was to effect a rollover, it is well established that a taxpayer's intention to take advantage of favorable tax laws does not determine the tax consequences of his or her transactions. Bezdjian v. Commissioner, 845 F.2d 217 (9th Cir. 1988), aff'g T.C. Memo. 1987-140; Carlton v. United States, 385 F.2d 238, 243 (5th Cir. 1967) (citing Commissioner v. Duberstein, 363 U.S. 278, 286 (1960)). What actually was done determines the tax treatment of a transaction. Weiss v. Stearn, 265 U.S. 242, 254 (1924).

The Court notes, however, that section 408(d)(3)(I) permits the Commissioner,[3] in his discretion, to waive the 60-day requirement under certain circumstances where taxpayers follow the instructions of Rev. Proc. 2003-16, 2003-1 C.B. 359. Petitioner is free to pursue relief with the Internal Revenue Service.

---

[3]The term "Secretary" in the statute means in this context the Commissioner of Internal Revenue. See secs. 7701(a)(11), 7803(a)(2)(A) (the Commissioner has the power to supervise the execution and application of the internal revenue laws).

## Whether There Was a Loan

Petitioners' second line of defense is an argument that the distribution was a loan from the SEP-IRA account that under section 72(p) is not includible in income. The attempted characterization of the distribution as a loan falls into the realm of "[b]e careful what you wish for."

Section 72(p)(1)(A) provides that loans from a plan to a participant or beneficiary are treated as distributions from the plan. Loans meeting the requirements of section 72(p)(2), however, will not be treated as distributions. Petitioners offered no evidence at trial of the factual predicates necessary to avail themselves of the section 72(p)(2) exception. Further, section 72(p) applies only to plans described in sections 401(a) and 403(a) and (b), a qualified employer plan, or a government plan. Sec. 72(p)(4)(A).

With respect to IRAs, section 408(e) provides that if the individual for whom the IRA was created, or his beneficiary, engages in a transaction prohibited by section 4975 as to the account, the account will not be treated as an IRA as of the first day of the tax year, and the account will be treated as having distributed all of its assets. Sec. 408(e)(2). Barring the extraordinary relief provided by

section 4975(c)(2), the lending of money between a plan and a disqualified person is a prohibited transaction. Sec. 4975(c)(1)(B).[4]

On the basis of the record, petitioner did not use his IRA as security for a loan as argued by respondent, nor did he borrow the distribution from his IRA as argued by petitioner. Had petitioner borrowed from his IRA, the tax consequences might have been even harsher than they are.

Respondent's determination that petitioner must include the distribution in income is sustained.

Additional 10% Tax for Early Withdrawal

Section 72(t)(1) imposes an additional tax on an early distribution from a qualified retirement plan equal to 10% of the portion of the amount that is includable in gross income. The 10% additional tax does not apply to distributions: (1) to an employee age 59-1/2 or older; (2) to a beneficiary (or the employee's estate) on or after the employee's death; (3) on account of the employee's disability; (4) as part of a series of substantially equal periodic payments made for life; (5) to an employee after separation from service after attainment of age 55; (6) as dividends paid with respect to corporate stock

---

[4]Certain loans described in sec. 4975(d)(1) are exempt from sec. 4975(c). Sec. 4975(f)(6)(A) and (B)(i)(II) excepts from the exemption individual retirement accounts and annuities. See sec. 7701(a)(37).

described in section 404(k); (7) to an employee for medical care; or (8) to an alternate payee pursuant to a qualified domestic relations order. Sec. 72(t)(2); see also sec. 72(t)(2)(A)(vii), (B)-(G) (setting forth other exceptions not applicable here).

When petitioner received the distribution, he had not reached the age of 59-1/2, and he has not alleged or shown that he comes within any of the other exceptions under section 72(t). Therefore, respondent's determination that petitioners are liable for the 10% additional tax on the distribution is sustained.

Accuracy-Related Penalty Under Section 6662(a)

Section 7491(c) imposes on the Commissioner the burden of production in any court proceeding with respect to the liability of any individual for penalties and additions to tax. Higbee v. Commissioner, 116 T.C. 438, 446 (2001); Trowbridge v. Commissioner, T.C. Memo. 2003-164, aff'd, 378 F.3d 432 (5th Cir. 2004). In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or addition to tax is appropriate. Higbee v. Commissioner, 116 T.C. at 446.

Section 6662(a) and (b)(1) imposes a 20% penalty on the portion of an underpayment attributable to negligence or disregard of rules or regulations. Negligence includes any failure to make a reasonable attempt to comply with the

provisions of the Internal Revenue Code. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. But the section 6662(a) penalty does not apply to any portion of an underpayment of tax if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Id.

The distribution is taxable, and petitioners failed to report it on their joint individual tax return. The Court concludes that respondent has produced sufficient evidence to show that the accuracy-related penalty under section 6662(a) is appropriate for 2009.

Petitioner relied on the advice of Hoag to engage in the transaction that caused the deficiency. The Court accepts petitioner's testimony that he was told that the funds would be replaced timely by loan proceeds. The Court also accepts petitioner's testimony that although he was aware that he might suffer some sort of penalty if the IRA funds were not replaced within 60 days, it was not made clear to

him from where the penalty would come. There is evidence in the record suggesting that there was some delay on the part of Schwab in processing the loan.

Petitioners provided their accountant with the Form 1099-R they received from Schwab. The accountant advised petitioners when preparing their return that unless they got the Form 1099-R "corrected" they would have an increase in income because of the distribution as well as a 10% additional tax for early withdrawal. Petitioners contacted Hoag to request a "corrected" Form 1099-R, and Hoag informed them that "it is all good" because they had put the money back into the SEP-IRA. Petitioners put Hoag and the accountant "in contact together", and the accountant prepared the return without including the distribution.

Taking into account all the pertinent facts and circumstances, the Court is convinced that petitioners did everything in their control to determine their proper tax liability.

The Court finds that petitioners were not negligent in filing their 2009 return. Accordingly, the Court rejects respondent's determination of the accuracy-related penalty under section 6662(a).

- 14 -

Other arguments made by the parties and not discussed herein were considered and rejected as irrelevant, without merit, or moot.

To reflect the foregoing,

<u>Decision will be entered for respondent with respect to the deficiency in tax and for petitioners with respect to the accuracy-related penalty under section 6662(a)</u>.