T.C. Memo. 1995-499


UNITED STATES TAX COURT


EPCO, INC. AND SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25248-93.          Filed October 17, 1995.


Juan D. Keller, Paul P. Weil, and Philip B. Wright,
for petitioner.

James A. Kutten, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION

GOLDBERG, Special Trial Judge: This matter is before the
Court on petitioner's Motion for Reconsideration under Rule 161
and Motion to Vacate Decision under Rule 162. The motions relate
to our Memorandum Findings of Facts and Opinion filed June 12,
1995 (T.C. Memo. 1995-249), and our decision entered on June 14,

1995.  The facts and holding of that opinion are incorporated herein by this reference.[1]

Brooks McArthy (McArthy) sought to develop a trailer park on land he owned to be called Brookshire Village Mobile Home Park (Brookshire).  McArthy utilized the resources of Eugene Fribis (Fribis), an engineer consultant and owner of Epco, Inc. (petitioner), the common parent of an affiliated group that includes House Springs Sewer Co. (House Springs) and Imperial Utility Corp. (Imperial). In particular, Fribis advised McArthy regarding the sewer system Brookshire would require.  McArthy later opted for an underground sewage pipe extension to County Club Manor (Manor), a sewage treatment facility operated by Imperial.  This method required the construction of pipes and expansion of Manor to handle the additional sewage.  The cost of this method totaled $540,000.  Each mobile home was required to pay a $400 "contribution in aid of construction fee" and a monthly service charge of $18 for sewage treatment.[2]

Imperial contracted with McArthy to build a sewer system for Brookshire.  Imperial agreed to build an underground wastewater collection pipe extending from Manor to Brookshire.  McArthy agreed to pay Imperial $200,000 in "tap-on fees" ("contributions

_____

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code as amended.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  The term "tap-on fee" is commonly used interchangeably with the term "contribution in aid of construction".

in aid of construction") and deposited this amount in an interest-bearing checking account in the names of McArthy and Imperial at Lemay Bank & Trust Co. The account bore McArthy's Social Security number as the taxpayer identification number, and interest earned on the account was paid to McArthy. Funds could be withdrawn from the bank by checks signed by both Fribis, as president of Imperial, and McArthy.

Imperial contracted with McClanahan Contracting (McClanahan), a partnership of which Fribis was a partner, to install the sewer main-line extension and expand Manor. The cost of extending the main-line from Manor to Brookshire was $350,000. Imperial paid approximately $150,000 of this cost and the remainder consisted of the $200,000 from the escrow account. The expansion of Manor cost $190,000.

The escrowed funds were credited toward the $400 per pad "contribution in aid of construction fee". As such, Imperial did not charge McArthy a fee to connect each mobile home to the sewer system. From the escrow account, $164,375 was disbursed in 1988 and $35,625 was disbursed in 1989 to subcontractors and contractors working on the construction of the sewer pipeline, including Price Bros., Klueter Bros., McClanahan, and Fred Weber Inc. Imperial now owns the sewer line extension.

On its 1988 Federal income tax return, petitioner included in gross income the $164,375 disbursed from the escrow and claimed depreciation in connection with those disbursements.

Petitioner did not report the $35,625 on its 1989 Federal income tax return. In her notice of deficiency, respondent determined that the $35,625 was includable in petitioner's income for 1989 as "contributions in aid of construction" under section 118.

At trial and in its briefs, petitioner argued that: (1) The contribution by McArthy (escrowed funds) is not a "contribution in aid of construction" within the meaning of section 118(b), but a nontaxable contribution to the capital of Imperial; (2) if the payment is a "contribution in aid of construction", including such amount in the income of a corporation would violate the Sixteenth Amendment; and (3) in the alternative, the fair market value of McArthy's contribution should be based on the revenue generated by the sewer line rather than the cost of construction.

In Epco, Inc. & Subs. v. Commissioner, T.C. Memo. 1995-249, we found that the funds disbursed from the escrow account were "contributions in aid of construction" of the sewer pipeline, and, therefore, we held that the amounts disbursed are includable in petitioner's income. Id. We further held, based on the legislative history of nonshareholder contributions, that including in income "contributions in aid of construction" did not violate the Sixteenth Amendment. With respect to petitioner's alternative argument, we stated:

> Finally, we reject petitioner's alternative argument that the amount of income includable should be the value of the main-line extension computed using the discounted cash-flow method based upon projected revenue. Imperial received cash. Imperial did not receive an operating sewer system,

and, therefore, the projected income stream from the expansion of sewage capacity is irrelevant.  The fact that Imperial used the cash to construct the main-line extension does not make the contribution equivalent to the asset constructed.  We note that petitioner's reliance on the Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986 (J. Comm. Print 1987), relating to section 118, is misplaced.  [Id.].

In its motions to vacate and for reconsideration, petitioner argues that the findings with respect to its alternative argument are factually incorrect in that petitioner did not receive cash, but, rather, received a sewer line.  Petitioner also argues that because its cost of the sewer line extension was greater than the amount of contributions by McArthy, it realized no income on the exchange.  We shall grant petitioner's Motion for Reconsideration and reexamine this argument.

Petitioner argues that the funds from the escrow account were never paid to petitioner, but, instead, were disbursed under the joint signatures of Fribis, as president of Imperial, and McArthy.  Petitioner states that the escrow agreement prevented it from receiving cash.  Based on a reexamination of the record, we agree that petitioner did not receive "cash" from the escrow account in the sense of a disbursement payable to petitioner.  However, in light of the fact that the disbursements were only made under the signatures of Fribis and McArthy to pay entities to which Imperial was contractually bound, and the fact that Imperial is now the owner of the pipeline, we conclude that the reasoning in Epco, Inc. & Subs. v. Commissioner, supra, is

correct. While petitioner may not have been given cash directly from the escrow account, petitioner received the benefit of the funds disbursed in the same manner as if the funds had been deposited directly into its own account. To argue otherwise would be an exercise in semantics, and it is well established that the substance of the transaction, rather than its form, must govern the tax consequences. Garcia v. Commissioner, 80 T.C. 491 (1983) (citing Commissioner v. Court Holding Co., 324 U.S. 331 (1945); Gregory v. Helvering, 293 U.S. 465 (1935); Biggs v. Commissioner, 69 T.C. 905 (1978), affd. 632 F.2d 1171 (5th Cir. 1980)).

Petitioner contends that "an escrow not under the control of the taxpayer is neither a vehicle for the realization of income nor the receipt of the escrow proceeds themselves." In support thereof, petitioner cites the following cases: Swaim v. United States, 651 F.2d 1066 (5th Cir. 1981); Sprague v. United States, 627 F.2d 1044 (10th Cir. 1980); Biggs v. Commissioner, supra; Carlton v. United States, 385 F.2d 238 (5th Cir. 1967); Garcia v. Commissioner, supra; Barker v. Commissioner, 74 T.C. 555 (1980); Brauer v. Commissioner, 74 T.C. 1134 (1980); Fredericks v. Commissioner, T.C. Memo. 1994-27; Grannemann v. United States, 649 F.Supp. 949 (E.D. Mo. 1986).

Most of the cases cited by petitioner have a common thread; namely, a discussion of or reference to the doctrine of constructive receipt. The doctrine generally provides that a

taxpayer realizes income without actual receipt if such income is available to the taxpayer and the availability thereof is not subject to substantial limitations.  Sec. 1.451-2(a), Income Tax Regs.  The doctrine of constructive receipt is not applicable in this case because the escrowed funds were, in fact, disbursed, and, as such, provided a direct benefit to petitioner.  The remaining cases cited by petitioner involve the issue of exchanges under section 1031.[3]  All of those cases are inapposite.

In addition, petitioner argues that we erred when we stated that petitioner's reliance on the Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986 (J. Comm. Print 1987), relating to section 118 (the General Explanation), is misplaced.  Petitioner argues that because it received a sewer line, not cash, the portion of the General Explanation concerning valuation is relevant to the determination of the fair market value of the sewer line, and, as a result, to the determination of the amount of income petitioner must recognize.  The funds in the escrow account were earmarked as "tap-on fees" or "contributions in aid of construction".  These funds went to those entities hired by petitioner to build a pipeline that petitioner now owns.  Clearly, petitioner received

---

[3]     Carlton v. United States, 385 F.2d 238 (5th Cir. 1967); Brauer v. Commissioner, 74 T.C. 1134 (1980); Biggs v. Commissioner, 69 T.C. 905 (1978), affd. 632 F.2d 1171 (5th Cir. 1980).

from McArthy not a sewer pipeline, but, rather, the direct benefit of the cash disbursements.[4]  Thus, as we stated in our opinion in <u>Epco, Inc. & Subs. v. Commissioner</u>, <u>supra</u>, the General Explanation is irrelevant to the facts in this case.

Having reconsidered petitioner's alternative argument and addressed the merits thereof, we deny petitioner's Motion to Vacate.

To reflect the foregoing,

<u>An appropriate order will</u>

<u>be issued</u>.

---

[4]    One of the direct benefits received by petitioner as a result of McArthy's contributions was that the funds went to pay contractors and subcontractors to whom petitioner was directly liable.