T.C. Memo. 1998-421


UNITED STATES TAX COURT


CHAD A. AND KATHERINE J. LINCOLN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10861-97.                  Filed November 24, 1998.


Chad A. and Katherine J. Lincoln, pro sese.

Ronald G. Dong, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


THORNTON, Judge:  Respondent determined a deficiency of
$55,814 in petitioners' 1993 Federal income tax and a $11,163
accuracy-related penalty under section 6662(a).  Unless otherwise
indicated, all section references are to the Internal Revenue

Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether petitioners are required to include in income capital gain from the sale of investment property; (2) whether certain interest payments and taxes that petitioners reported as Schedule E deductions from rental real estate income should be redesignated as Schedule A itemized deductions; and (3) whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a).

FINDINGS OF FACT

The parties have stipulated some of the facts, which are so found. The stipulation of facts is incorporated herein by this reference. At the time the petition was filed, petitioners were husband and wife whose primary residence was in Carmel, California.

On July 12, 1976, petitioners purchased a house in Pacific Grove, California, for $48,351. They resided in this house for approximately 4 years before converting it into rental property.

On April 7, 1992, petitioners purchased a 5-acre lot in Big Sur, California, for $160,316. Their purchase offer contained no contingencies. Borrowing against a personal line of credit, petitioners paid the seller of the property, Marcia D'Esopo, $35,316 as a cash downpayment and assumed a note for the balance of the purchase price. In July 1992, petitioners began work to

construct a house on the Big Sur property. The house was completed in August 1994, and petitioners commenced using it as a rental property.

In the meantime, on March 16, 1993, petitioners sold the Pacific Grove property to Allen and Marla Elvin (the Elvins) for $228,668. The Elvins entered into an agreement with petitioners whereby, upon the closing of a Chicago Title Company escrow account, the money consideration for the Pacific Grove property would be deposited into an account that petitioners opened at Provident Central Credit Union for this purpose. After the sales proceeds were deposited, petitioners directed Provident Central Credit Union to make payments by cashier's check to contractors hired to make improvements on the Big Sur property. In addition, petitioners directed Provident Central Credit Union to reimburse petitioner husband for the downpayment on the Big Sur property and for expenses incurred to improve it. Statements from the Provident Central Credit Union account were sent directly to petitioners' home address. Petitioners had sole authority to withdraw funds and make payments from the account.

Petitioners did not report any gain on the sale of the Pacific Grove property on their joint 1993 Federal income tax return, nor did their return include a Form 8824, Like-Kind Exchanges.

In the notice of deficiency, respondent determined that petitioners failed to meet the requirements for a section 1031 exchange and included in petitioners' income capital gain from the sale of the Pacific Grove property. Respondent also reallocated certain interest and tax expenses attributable to the Big Sur property from Schedule E (expenses of rental real estate) to Schedule A (itemized deductions).

OPINION

Section 1031 Exchange

Generally, a taxpayer must recognize the entire amount of gain or loss on the sale or exchange of property. Sec. 1001(c). Section 1031(a)(1) contains an exception to this general rule:

> (1) In general.--No gain or loss shall be recognized on the exchange of property held for productive use in a trade or business or for investment if such property is exchanged solely for property of like kind which is to be held either for productive use in a trade or business or for investment.

The purpose of section 1031 is to defer recognition of gain or loss when an exchange of like-kind property takes place between a taxpayer and another party. Coastal Terminals, Inc. v. United States, 320 F.2d 333, 337 (4th Cir. 1963). The basic reason for this tax treatment is that the exchange does not materially alter the taxpayer's economic situation, the property received in the exchange being viewed as a continuation of the old investment still unliquidated. Koch v. Commissioner, 71 T.C.

54, 63 (1978). Eligibility for this treatment is circumscribed by a number of specific statutory requirements. For purposes of this case, we need be concerned only with the threshold requirement that there be an "exchange" of property. We hold that petitioners' transactions did not constitute an exchange.

An exchange ordinarily requires a "reciprocal transfer of property, as distinguished from a transfer of property for a money consideration only". Sec. 1.1002-1(d), Income Tax Regs. A sale for cash does not constitute an exchange even though the cash is immediately reinvested in like property. Coastal Terminals, Inc. v. United States, supra at 337; see also Bell Lines, Inc. v. United States, 480 F.2d 710, 714 (4th Cir. 1973); Carlton v. United States, 385 F.2d 238, 242 (5th Cir. 1967); Rogers v. Commissioner, 44 T.C. 126, 136 (1965), affd. per curiam 377 F.2d 534 (9th Cir. 1967).

Petitioners purchased the Big Sur property from Marcia D'Esopo with a cash downpayment and assumed a note for the balance of the purchase price. Almost a year later, they sold the Pacific Grove property to the Elvins and received cash. Although petitioners may have intended to effect a section 1031 exchange, there is no evidence that either Marcia D'Esopo or the Elvins agreed to participate in an exchange of property. Indeed, petitioner husband testified at trial that it was only after receiving an offer on the Pacific Grove property -- almost a year

after buying the Big Sur property -- that he began investigating the possibility of effecting a section 1031 exchange. In these circumstances, we believe it is abundantly clear that petitioners' purchase of the Big Sur property and their subsequent sale of the Pacific Grove property constituted two separate transfers of property for money consideration, rather than an exchange.

In a case with facts that are not favorably distinguishable for petitioners, the court to which an appeal of this case would lie reached a similar conclusion. In Bezdjian v. Commissioner, 845 F.2d 217 (9th Cir. 1988), affg. T.C. Memo. 1987-140, the taxpayers wished to exchange a rental property they owned for a gas station. The gas station owner, however, declined to participate in an exchange. The taxpayers purchased the gas station using proceeds of a loan secured in part by a deed of trust on their rental property. About 3 weeks later, the taxpayers sold the rental property to a third party. The court held that there was no exchange within the meaning of section 1031, because the taxpayers simply acquired one parcel of real property from one party and sold another parcel to a different party; although the taxpayers may have intended to make an exchange, there was no evidence that either of the other parties agreed to participate in an exchange. See also Dibsy v. Commissioner, T.C. Memo. 1995-477 (holding that the taxpayers'

purchase of one liquor store and their subsequent sale of another constituted two independent events, rather than a section 1031 exchange).

Petitioners contend that they never would have sold the Pacific Grove property except for their need to generate funds to improve the Big Sur property, and that hence the two transactions were interdependent. We question the premises and disagree with the conclusion. While petitioners may have viewed the sale of the Pacific Grove property as a source of revenue to finance construction on the Big Sur property, a year prior to the sale of the Pacific Grove property they were able to borrow against their personal line of credit to make a cash downpayment on the Big Sur property. Moreover, they began construction on the Big Sur property 9 months prior to the Pacific Grove sale. In any event, neither the petitioners' financial motivation for selling the Pacific Grove property nor their application of the sales proceeds operates to transform the independent purchase and sale transactions into an exchange. See Anderson v. Commissioner, T.C. Memo. 1985-205.

Likewise, it is of no material significance that the Elvins agreed that the money consideration for their purchase of the Pacific Grove property should be deposited into petitioners' Provident Central Credit Union account. Indeed, it is difficult to imagine what difference it could have made to the Elvins.

Petitioners had unfettered and unrestrained control over the money in the Provident Central Credit Union account, which was in their names.  Although the funds were used to finance improvements at the Big Sur property and to reimburse petitioner husband for the cash downpayment on the Big Sur property, petitioner husband conceded at trial that payment could have been made out of the account for any purpose.  These circumstances strongly support the conclusion that the Pacific Grove sale was an independent transfer of property for money consideration rather than part of an exchange.  See Carlton v. United States, 385 F.2d 238, 243 (5th Cir. 1967); Hillyer v. Commissioner, T.C. Memo. 1996-214; Nixon v. Commissioner, T.C. Memo. 1987-318.

At most, the circumstances relating to petitioners' establishment and use of the Provident Central Credit Union account evidence their belated intent to avail themselves of section 1031 treatment and the Elvins' awareness of their intent. The circumstances do not, however, suggest any mutuality of intent between petitioners and the Elvins, much less between petitioners and Marcia D'Esopo, to effect an exchange.  It is well settled that a taxpayer's unilateral intent to undertake an exchange does not govern the tax consequences where no reciprocal transfer of property actually occurs.  See Bezdjian v. Commissioner, supra at 218; Garcia v. Commissioner, 80 T.C. 491, 498 (1983); Rogers v. Commissioner, supra at 136.

At trial and on brief, petitioners cite <u>Starker v. United States</u>, 602 F.2d 1341 (9th Cir. 1979), as their underlying authority for section 1031 exchange treatment. Their reliance is misplaced. In <u>Starker</u>, the taxpayer transferred timberland to a corporation which, within a previously agreed period, transferred to the taxpayer various parcels of land and certain contract rights. In <u>Starker</u>, unlike the instant case, no cash was ever transferred. <u>Starker</u> held, in relevant part, that the nonsimultaneous transfers of property did not preclude section 1031 treatment.[1] <u>Starker</u> does not, however, dispense with the requirement that there in fact be an exchange of property. As previously discussed, petitioners have failed to cross that initial threshold.

Accordingly, we sustain respondent's determination that petitioners have failed to meet the requirements for a section 1031 exchange.

Interest Expenses and Taxes

On Schedule E of their 1993 joint Federal income tax return, in computing a claimed loss from rental real estate, petitioners

---

[1] Subsequent to the decision in <u>Starker v. United States</u>, 602 F.2d 1341 (9th Cir. 1979), Congress amended sec. 1031(a) to impose certain time limitations on the completion of a nonsimultaneous exchange. See sec. 1031(a)(3), as enacted by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 77(a), 98 Stat. 596. Respondent has not raised, and we do not reach, the issue of whether petitioners have satisfied those statutory requirements.

claimed expenses and taxes relating to several rental properties, including the Big Sur property.  Respondent determined that since construction of the Big Sur rental property was not completed and rental did not commence until 1994, petitioners had no ongoing business in 1993 with regard to this property.  Accordingly, respondent reallocated from Schedule E to Schedule A, as itemized deductions, the interest and taxes attributable to the Big Sur property.

Petitioners bear the burden of proving that respondent's determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  At trial, petitioner husband indicated that in the event section 1031 treatment were disallowed, he "understood" respondent's determination as to reallocation of these expenses.  On brief, petitioners did not address the issue.  Accordingly, we sustain respondent's determination in this regard.

Accuracy-Related Penalty

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment of tax attributable to, among other things, a substantial understatement of income tax, which is defined as an understatement that exceeds the greater of 10 percent of the tax required to be shown or $5,000.  Sec. 6662(d)(1)(A). Petitioners' failure to report the gain from the sale of the Pacific Grove property and their disallowed claim to Schedule E

expenses resulted in a $55,814 understatement of income tax. This amount is in excess of $5,000 and exceeds 10 percent of the amount of tax required to be shown on the return.

Any understatement is reduced to the extent that it is attributable to an item that was adequately disclosed and has a reasonable basis, or for which there was substantial authority for its tax treatment. Sec. 6662(d)(2)(B). Petitioners did not make adequate disclosure, since they did not disclose on their return or on a statement attached to the return the relevant facts affecting the tax treatment of the sale of the Pacific Grove property or of the reallocated items claimed on Schedule E. See sec. 6662(d)(2)(B)(ii)(I).

The remaining question is whether there was substantial authority for the tax treatment petitioners claimed. Substantial authority exists when the weight of authority supporting the treatment of an item is substantial as compared to the weight of authority for the contrary treatment. Sec. 1.6662-4(d)(3)(i), Income Tax Regs. In determining whether there is substantial authority, all authorities relevant to the tax treatment of an item, including those authorities pointing to a contrary result, are taken into account. Id. For this purpose, authorities include statutory and regulatory provisions, legislative history, administrative interpretations of the Commissioner, and court decisions, but not conclusions reached in treatises or legal

periodicals.  <u>Booth v. Commissioner</u>, 108 T.C. 524, 578 (1997); sec. 1.6662-4(d)(3)(iii), Income Tax Regs.

Petitioners' position is not supported by any well-reasoned construction of the relevant statutory provisions.  There is no substantial authority for their position that the purchase of the Big Sur property and the subsequent sale of their Pacific Grove property constituted an exchange.  The cases petitioners have cited on brief are readily distinguishable and to the extent they are pertinent, undermine their position.  Similarly, there is no substantial authority for petitioners' treatment of the reallocated items.

Accordingly, we sustain respondent's imposition of the accuracy-related penalty.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.